EXHIBIT E

```
1            IN THE UNITED STATES DISTRICT COURT
2              CENTRAL DISTRICT OF CALIFORNIA
3
4   ANDRA JAY AS EXECUTOR   : NO. CV16-2026 MWF
    OF THE ESTATE OF RITA   : (DTBx)
5   CUTLER,                 :
        Plaintiff           :
6                           :
            v.              :
7                           :
    NAVIENT SOLUTIONS,      :
8   INC; EQUIFAX            :
    INFORMATION SERVICES,   :
9   LLC; AND TRANS UNION    :
10  LLC,                    :
11      Defendants          :
12  _____
13
14            Oral Deposition of BRAD JONES,
15  taken pursuant to notice, at Veritext
16  Wilmington, 300 Delaware Avenue, Suite 815,
17  Wilmington, Delaware, beginning at
18  approximately 9:00 a.m., on FRIDAY, SEPTEMBER
19  29, 2017 before Jeanne Christian, Professional
20  Reporter and Notary Public.
21
22
23  Job No. 2659453
24  Pages 1 - 61
```

Page 1

EXHIBIT E
PAGE 077

```
 1   A P P E A R A N C E S:

 2

 3   Representing the Plaintiffs:

 4        Telephonically:

 5        KAZEROUNI LAW GROUP, APC

 6        BY:  MATTHEW M. LOKER, ESQUIRE

 7        245 Fischer Avenue, Unit D1

 8        Costa Mesa, California 92626

 9        Phone:  (800) 400-6808

10        ml@kazlg.com

11

12   Representing the Defendant:

13        VEDDER PRICE

14        BY:  LISA M. SIMONETTI, ESQUIRE

15        1925 Century Park East, Suite 1900

16        Los Angeles, California 90067

17        Phone:  (424) 204-7738

18        Lsimonetti@vedderprice.com

19

20

21

22

23

24
```

                                              Page 2

EXHIBIT E
PAGE 078

```
 1                      I N D E X

 2

 3      EXAMINATION

 4       BRAD JONES                        Page

 5          BY MR. LOKER                      4

 6

 7

 8

 9

10                   E X H I B I T S

11      NUMBER           DESCRIPTION            PAGE

12      Exhibit 9      Notice of Deposition. . .   8

13      Exhibit 10     Complaint. . . . . . . . . 39

14      Exhibit 11     Answer. . . . . . . . . . 39

15      Exhibit 12     ACDV. . . . . . . . . . . 47

16      Exhibit 13     ACDV. . . . . . . . . . . 47

17      Exhibit 14     8/8/16 Letter. . . . . . .53

18      Exhibit 15     Settlement Agreement. . . . 55

19

20

21

22

23

24

                                          Page  3
```

Veritext Legal Solutions
866 299-5127

```
 1                    BRAD JONES, after having been
 2    first duly sworn, was examined and testified
 3    as follows:
 4                       -  -  -
 5                    EXAMINATION
 6                       -  -  -
 7    BY MR. LOKER:
 8    Q.    Can you state and spell your name for
 9    the record, please?
10    A.    Brad Jones.
11    Q.    Could you spell that?
12    A.    Brad, B-R-A-D; Jones, J-O-N-E-S.
13    Q.    Have you ever had your deposition taken
14    before?
15    A.    Yes.
16    Q.    How many times?
17    A.    Once.
18    Q.    Was that in your capacity with Navient?
19    A.    I'm sorry, could you repeat that?
20    Q.    Were you deposed because you were an
21    employee of Navient?
22    A.    Yes.
23    Q.    When was that?
24    A.    One year ago.
```

Veritext Legal Solutions
866 299-5127

EXHIBIT E
PAGE 080

```
 1    Q.    And do you remember the nature of that
 2    lawsuit?
 3    A.    I do.
 4    Q.    What was it?
 5    A.    FCRA.
 6    Q.    Do you remember the name of that
 7    lawsuit?
 8    A.    I do not recall.
 9    Q.    Do you recall if that lawsuit went to
10    trial?
11    A.    I don't recall.
12    Q.    Well, what I will do right now is just
13    go through the ground rules.  I know you have
14    been deposed before, but I just want to make
15    sure that we are all on the same page for
16    today.  And the most important thing for you
17    to keep in mind is that you are under oath, so
18    even though you are in that informal
19    conference room there, everything you say has
20    the same force and effect as if you are
21    sitting in front of the jury.
22                   Do you understand that?
23    A.    Understood.
24    Q.    And since you are under oath, there is
```

Veritext Legal Solutions
866 299-5127

EXHIBIT E
PAGE 081

```
 1    an important distinction that will govern your

 2    answers.   I'm looking for your best estimate,

 3    but I don't want you to guess.   A good

 4    example of that would be, you are sitting at a

 5    conference room table, and if I asked you how

 6    long it was, based upon your personal

 7    knowledge, you could throw out a number, it

 8    looks like it is 8 to 10 feet there.   What

 9    you couldn't do is give me a guess -- what you

10    shouldn't do is give me a guess.   So if I

11    asked you how much does my dog, Lulu, weigh,

12    and you gave me a number of 30 pounds, that's

13    a pure guess, because you have never met my

14    dog, you don't even know if I have a dog or

15    what type of breed she is.

16                     Do you understand that

17    distinction?

18    A.    Understood.

19    Q.    Undoubtedly, I'm going to ask a bad

20    question, so feel free to ask me to rephrase

21    it, because if you give me an answer, I will

22    assume that you understood the question.   Is

23    that fair?

24    A.    That's fair.
```

```
 1     Q.     And we are allowed to take breaks here.
 2     It is not an endurance test.  So if you need a
 3     break, just let me know.   The only thing that
 4     I will ask is that you give me an answer
 5     before we take a break, so we don't lose our
 6     place.   Is that all right?
 7     A.     Yeah, that's fine.
 8     Q.     And you are doing a good job at this
 9     right now.  So we have the court reporter
10     there taking down everything that's said.
11     You might remember from your last deposition
12     that the questions are going to be a bit
13     long-winded.   I'm guessing you will be able
14     to anticipate where I am going with the
15     question, and in everyday, natural
16     conversation, you will jump in.   That will
17     make the court reporter's job more difficult,
18     and it will lead to a confusing transcript at
19     the end, which we are trying to avoid.  So if
20     you let me ask my long-winded question before
21     you answer, I would appreciate it.  Is that
22     fair?
23     A.     That's fair.
24     Q.     And the thing with non-verbal answers,
```

Page 7

EXHIBIT E
PAGE 083

1    it would be natural to say uh-huh or um-hum or

2    say something was this far away.   For

3    everyone sitting there today, it might make

4    sense, but when we go back and review the

5    transcript, it will be unclear what you

6    testified to.   So to the extent possible, if

7    you could give us verbal answers, we would

8    appreciate that.

9                    You are not here as a legal

10   representative or a lawyer, so just answer

11   factually.   I'm not going to test you on

12   elements or anything of that sort, so just

13   give me a factual basis for your understanding

14   of the question.

15                    Is that understood?

16   A.    Understood.

17   Q.    Any question before we jump into it?

18   A.    No.

19   Q.    So we have Exhibit 9.   There is a cover

20   page for each exhibit.   If you could go to

21   the first page.   And I don't know how much --

22   how many legal pleadings you have seen, but

23   the title of each document is always on the

24   right side for the caption.   This particular

Page 8

1    document is Plaintiff's Amended Notice of

2    Taking Deposition of Defendant Navient

3    Solutions, Inc., Designated Person, Pursuant

4    to Federal Rule of Civil Procedure 30(b)(6).

5                     Have you seen this document

6    before?

7    A.    Yes.

8    Q.    And let's see.   This notice, as opposed

9    to an individual notice, where we name a

10   particular person, has a category of questions

11   or topics that I want to ask you questions

12   about.   Let me double-check.   Actually, to

13   expedite it, is he the only witness?

14                     MS. SIMONETTI:  Yes.

15                     MR. LOKER:  Were there any

16   topics that he isn't prepared to discuss?

17                     MS. SIMONETTI:  Well, we have

18   objected to many of the topics on various

19   grounds.   We are not going to eliminate any

20   topics, but I think that there are problems

21   with them as framed.   So why don't we see how

22   we can do with them?

23                     And just to make it easier for

24   you, he did review the notice, also our

Page 9

EXHIBIT E
PAGE 085

1    objections to the notice, the prior

2    production, the production in the prior case,

3    that's Pages 1 to 264, something like that,

4    and the documents produced in this case and

5    the discovery responses.

6                        MR. LOKER:   Okay, that will

7    save some questions.

8    BY MR. LOKER:

9    Q.    Okay.   So Brad, let's just go into your

10   background at Navient.   What is your current

11   position, title?

12   A.    Director of Credit Bureau Management and

13   Fraud.

14   Q.    Okay.   And how long have you been in

15   that role?

16   A.    Credit Bureau -- Director of Credit

17   Bureau Management, for two and a half years;

18   the fraud element, six months.

19   Q.    Okay.   Do you know Jayson Bocanegra?

20   A.    Yes.

21   Q.    Is he still with the company?

22   A.    Yes.

23   Q.    What do you do as the Director of the

24   Credit Bureau aspect?

Page 10

EXHIBIT E
PAGE 086

1    A.    Responsible for vendor relations,

2    dispute management, and credit bureau

3    reporting.

4    Q.    In what sort of -- what are your

5    day-to-day tasks in that role?

6    A.    Ensuring the relationship between

7    Navient and the vendor is on point when it

8    comes to organizing any type of activities or

9    events that occur between Navient and any one

10   of the three major credit reporting agencies,

11   responsible for the operations group that

12   responds to automated disputes, as well as

13   direct disputes, and responsible for the

14   analytics and the data and the furnishing of

15   the number of records that Navient furnishes

16   to the three main credit reporting agencies.

17   Q.    I appreciate that.  And you mentioned

18   vendors.   How many vendors does Navient use?

19   A.    I don't know the total number of vendors

20   that Navient uses.

21   Q.    Is it multiple vendors?

22   A.    Yes.

23   Q.    More than five?

24   A.    Yes, Navient uses more than five

Page 11

EXHIBIT E
PAGE 087

```
1    vendors.
2    Q.    And what do the vendors do for Navient?
3    A.    There are several -- there is many
4    vendors that perform tasks or duties or jobs
5    for Navient.  What I'm specifically -- I'm
6    sorry.
7    Q.    That has to do with credit reporting.
8    A.    Oh, credit reporting vendors?  We have
9    three that are credit reporting agencies.
10   They receive the data that we furnish and
11   publish it in credit reports is one task.
12   They do data analytics.  They develop products
13   based on the data that's furnished to the
14   credit reporting agencies.  They market their
15   products, just among a few things that they
16   do.
17   Q.    And these vendors, are you talking about
18   the credit bureau specifically or other third
19   parties?
20   A.    I'm speaking specifically to the credit
21   bureaus.
22   Q.    Oh, okay.  And if you -- you might know,
23   but there is a person named Donald MacFadden
24   that responded to a dispute in this case.
```

Page 12

EXHIBIT E
PAGE 088

1      Are you familiar with him?

2      A.    Yes.

3      Q.    And he doesn't work for Navient, does

4      he?

5      A.    He does not.

6      Q.    Who does he work for?

7      A.    At the time, I do not know.

8      Q.    Does he work for a vendor?  Is that what

9      you referred to his company as?

10     A.    That's correct.

11     Q.    You just don't remember the name of it?

12     A.    He worked for ACT.

13     Q.    Oh, okay.  And what does ACT do for

14     Navient?

15     A.    They responded to disputes.

16     Q.    How did they do that?

17     A.    Through the channels that a Navient

18     employee or ACT would respond to a dispute.

19     Q.    And can you describe those channels?

20     A.    The channel is a website that's operated

21     by OLDE, which is called e-OSCAR.

22     Q.    Right, okay.

23     A.    So he would respond to a dispute through

24     that system, based on the training,

Page 13

EXHIBIT E
PAGE 089

1    procedures, education that he has received

2    from Navient on how to respond to a dispute.

3    Q.    Does that system allow Mr. MacFadden to

4    review Navient documents?

5    A.    That specific system does, along with

6    other systems.

7    Q.    What from Navient is Mr. MacFadden able

8    to see?

9    A.    He is able to see the same systems that

10   a Navient employee would be able to see, which

11   would entail the CORE system, image system,

12   e-OSCAR.

13   Q.    Anything else?

14   A.    There is a tool called an Innovis

15   Prefill.

16   Q.    I'm sorry, what was that tool called?

17   A.    It is called an Innovis Prefill.

18   Q.    Okay, anything else?

19   A.    He would be able to access LexisNexis as

20   well or Accurate.

21   Q.    You mentioned first the CORE system.

22   What is that?

23   A.    I'm sorry, could you repeat that?

24   Q.    I believe that the first system you

Page 14

EXHIBIT E
PAGE 090

1    mentioned was called CORE, C-O-R-E; is that

2    right?

3    A.    Correct.

4    Q.    And what is that system?

5    A.    CLASS, C-L-A-S-S.

6    Q.    What does that mean?  The CLASS system?

7    A.    Correct.

8    Q.    What is the CLASS system?

9    A.    It is the CORE system -- a CORE system

10   that Navient uses that houses data on

11   individuals, customers.

12   Q.    What sort of data?

13   A.    Account information.

14   Q.    And that account information would be

15   the same account notes that a Navient employee

16   would receive?  I'm sorry, be able to see?

17   A.    If the Navient employee notated the

18   account, correct.

19   Q.    Right.  And what sort of information is

20   in the account notes?

21   A.    Depending on what the Navient employee

22   noted on the account would determine what

23   information is in the CORE system.

24   Q.    Do the employees receive training as to

Page 15

EXHIBIT E
PAGE 091

1    what is supposed to be in the system?

2    A.    They do, yes.

3    Q.    What does that training entail?

4    A.    Classroom training for several hours

5    with a trainer, on-line training is the

6    training that's provided.

7    Q.    Is there any requirement for the Navient

8    employees to enter information into the

9    account notes regarding a lawsuit that's filed

10   by a consumer against Navient?

11   A.    That, I'm not aware of, as far as

12   Navient employees.  Specific to the role that

13   Donald MacFadden did, no.

14   Q.    Would a lawsuit in general be entered

15   into the account notes?

16   A.    I'm not familiar with the process or

17   procedures requiring lawsuits to be entered

18   into the system.

19   Q.    Just in general or you are not familiar

20   with the specific policy requiring that?

21   A.    I'm not familiar with the policy in

22   regards to that.

23   Q.    Have you seen account notes where there

24   are discussions of a lawsuit in there?

Page 16

1    A.    Yes.

2    Q.    Would the account notes reflect if there

3    is any sort of settlement with regard to an

4    account?

5                   MS. SIMONETTI:  Hang on.  So

6    just to help the witness out here, you can't

7    reveal anything that might be privileged

8    information that you may have read on account

9    notes.  So you can't go too far with questions

10   like this, and you can answer that one yes or

11   no.

12                  THE WITNESS:  Could you repeat

13   the question?

14                  MS. SIMONETTI:  Go ahead.

15   BY MR. LOKER:

16   Q.    One of the things I mentioned is, you

17   are not here to talk about legal questions,

18   Lisa just brought up privileged information,

19   so if you ever have any discussions with

20   counsel, whether it is Lisa or someone else,

21   don't go into the content of those

22   discussions, except privilege, and then she

23   will jump in if there is anything else that

24   might be objectionable, but my question wasn't

Page 17

EXHIBIT E
PAGE 093

```
1    about specific terms of a settlement, but just

2    if an account is settled, would that be

3    notated anywhere in the account notes?

4              MS. SIMONETTI:  And you don't

5    mean account, you mean an action, a lawsuit,

6    right?  You just said account.

7    BY MR. LOKER:

8    Q.    Yes, an account.  So if there is a

9    different payment plan or if it is resolved in

10   some way, would that be reflected in the

11   account notes?

12             MS. SIMONETTI:  Do you

13   understand the question?  I think I am a

14   little lost.  Are you asking whether a

15   lawsuit is resolved by some sort of a

16   compromise on a loan, and that would be

17   reflected in notes?

18             MR. LOKER:  Not yet.  I was

19   going to get there, but specifically, if an

20   account is resolved in general, you know,

21   pre-litigation, would that be reflected in the

22   account notes?  Or without litigation?

23             THE WITNESS:  Yes.

24   BY MR. LOKER:
```

                                              Page 18

EXHIBIT E
PAGE 094

1    Q.    And how would that be reflected?

2    A.    There would be specific code that would

3    be applied to an account that would indicate

4    settled for less than full amount.

5    Q.    Do you know what that code is?

6    A.    I do.

7    Q.    What is it?

8    A.    It is Special Comment Code AU.

9    Q.    A2, did you say?

10   A.    A as in apple; U as in unicorn.

11   Q.    Oh, I see.  And special comment code,

12   does that refer to the Metro 2 guidelines or

13   is that specifically within Sallie Mae?  Or

14   Navient, rather?

15   A.    Metro 2.

16   Q.    Okay.  Sorry, I keep calling it Sallie

17   Mae.  So Navient utilizes Metro 2 within

18   their internal account notes?

19   A.    Metro 2 data is available to be seen

20   within the CORE systems.

21   Q.    I see.  So Mr. MacFadden could see

22   Metro 2 data from the CORE system when he is

23   reviewing a dispute?

24   A.    Correct.

Page 19

EXHIBIT E
PAGE 095

1    Q.    Have you seen any Metro 2 data with

2    regard to Mr. Cutler's credit report and

3    account?

4    A.    Through the research that I have done

5    for this deposition, I have reviewed the

6    account.

7    Q.    And what did that research yield?

8    A.    The history of the account.

9    Q.    Specifically?

10   A.    From the beginning of the account to the

11   history to prior litigation, I reviewed that

12   through the documents that were provided for

13   this deposition.

14   Q.    And what about the current disposition

15   of the account?

16   A.    I am aware of that.

17   Q.    What is that?

18   A.    The current -- repeat that question, I'm

19   sorry.

20   Q.    No, no, no need to be sorry.  If you

21   don't understand, feel free to ask me to

22   rephrase.  That's never going to bother me.

23                   What is the current status of

24   the account?

Page 20

1    A.    The current status of the account?

2    Q.    Right.

3    A.    That, I don't recall the specific

4    account.

5    Q.    Is it open, closed?

6    A.    That, I don't recall.

7    Q.    Did you review the Metro 2 data for the

8    current status?

9    A.    No, I have not reviewed the Metro 2 data

10   for this account.

11   Q.    I believe you said earlier, you reviewed

12   Metro 2 data for this account?

13   A.    Well, I have reviewed the Metro data

14   specific to this account, in regards to the

15   current status, I don't recall the current

16   status of the account.

17   Q.    Do you know if the account is currently

18   being reported to any credit bureaus?

19   A.    I do, yes.

20   Q.    Is it?

21   A.    Yes.

22   Q.    And it is being reported as a delinquent

23   account?

24   A.    That, I don't recall.

Page 21

1    Q.    You know it is being reported, but you

2    don't know how?

3    A.    That's correct.

4    Q.    Who would know?

5    A.    I can't answer that.

6    Q.    You are the person most knowledgeable.

7    Is there someone else within the company that

8    would know more about this issue?

9    A.    No.

10   Q.    No?  So no one within Navient would know

11   how this account is currently being reported

12   to credit bureaus?

13   A.    There is other people that could

14   determine how this is being reported if they

15   were to look at the account today, as I would

16   be one of them.   As far as the current

17   status, I do not recall.

18   Q.    In your review of the account, did you

19   see that the account in response to a credit

20   bureau dispute was verified?

21   A.    Yes, I did.

22   Q.    And do you know why it was verified?

23   A.    Because Navient received a dispute from

24   one of the credit reporting agencies through

Page 22

EXHIBIT E
PAGE 098

1    e-OSCAR.

2    Q.    Right.   And then what happened?

3    A.    Then the dispute was responded to within

4    the 30-day timeframe.

5    Q.    Of course.   What was reviewed in

6    responding to the dispute?

7    A.    The procedures and the training would

8    require an individual to review many pieces of

9    information that would be available to them.

10   Specifically, what was responded to or what

11   was used, I'm sorry, by Donald MacFadden, I

12   would believe the training and the material

13   that we have trained him on was used; however,

14   I was not sitting with him at the time that he

15   responded to this dispute.

16   Q.    So you don't know what Mr. MacFadden did

17   in verifying the account?

18   A.    I know what he was trained to do.

19   Specific to this one dispute, I was not with

20   him at the time in which he responded, so I

21   cannot confirm what he did at the time in

22   which he responded to this dispute.

23   Q.    Okay.   Are there any notes of what Mr.

24   MacFadden did in responding to the dispute?

Page 23

EXHIBIT E
PAGE 099

```
1    A.    We have the ability to see what and how

2    he responded to the dispute.

3    Q.    Have you reviewed what he did?

4    A.    I have.

5    Q.    And what did he do?

6    A.    He responded to the dispute based off of

7    the information that he reviewed on -- he

8    followed the procedures in responding to this

9    dispute.

10   Q.    Where are those notes kept?

11   A.    We can review the completed dispute.

12   Q.    Are you referring to the ACDV?

13   A.    That's correct.

14   Q.    Are there notes aside from the ACDV?

15   A.    Not -- no.

16   Q.    So aside from the ACDV, are there any

17   sort of contemporaneous notes that Mr.

18   MacFadden would take while he is reviewing the

19   dispute?

20   A.    Not that I reviewed.

21   Q.    And aside from what he was trained to

22   do, do you have any personal knowledge about

23   the steps that Mr. MacFadden took in

24   responding to a dispute?
```

1    A.    Could you reask or repeat that question?

2    Q.    Yes.  Aside from what he was trained to

3    do, do you have any personal knowledge about

4    the actual steps that Mr. MacFadden took in

5    responding to the dispute?

6    A.    I do not.

7    Q.    I think one of the other systems you

8    mentioned was called Image, I-M-A-G-E; is that

9    right?

10   A.    No.   We do not use a system called

11   Image.

12   Q.    What sort of -- what other system,

13   besides CLASS, did Mr. MacFadden have access

14   to?

15   A.    He has access to a system that retains

16   any images that are received.   That's what I

17   think you are referring to?

18   Q.    Yes.

19   A.    Correct.

20   Q.    Can you explain that system?  Actually,

21   first, what are the images that are received?

22   A.    All images, all documents, that are sent

23   to Navient are stored in the imaging system.

24   Q.    And the documents you are referring to

Page 25

1    are sent to Navient along with the dispute?

2    A.    If a consumer attaches a document with a

3    dispute, then the image will be retained in

4    the image system.

5    Q.    Did you see any documents imaged in this

6    case?

7    A.    Have I?

8    Q.    Yes.

9    A.    I have.

10   Q.    Do you recall what was imaged?

11   A.    From researching this case, I have seen

12   all documents specific to this account from

13   the time it was opened until today.

14   Q.    Right.   I understand there is a lot of

15   documents, so do you recall as you sit there

16   today -- and it is fine if you don't -- what

17   documents were imaged with regard to the

18   disputes?

19   A.    I am aware of documents that were -- are

20   imaged in regards to the dispute.

21   Q.    But do you know what specifically those

22   documents are?

23   A.    I do.

24   Q.    What are they?

Page 26

1   A.    The two documents that I reviewed in

2   this case specific to the dispute are

3   documents that were sent to the credit

4   reporting agency in response to a dispute from

5   -- on this account.

6   Q.    Specifically, what documents were

7   imaged?

8   A.    Two letters that were sent in response

9   to the dispute that was initiated on this

10  account.

11  Q.    Two letters sent by Navient or sent with

12  the dispute?

13  A.    Sent by Navient, responding to the

14  dispute.

15  Q.    I see.   Do you know if any documents

16  were included with the dispute?

17  A.    I don't believe so.

18  Q.    Would those be imaged?

19  A.    If there were documents received with

20  the dispute and provided by the credit

21  reporting agency that is -- the dispute was

22  initiated to, we would image those documents.

23  Q.    I see.   I think you mentioned that Mr.

24  MacFadden has access to LexisNexis?

Page 27

```
 1     A.     Correct.

 2     Q.     What can Mr. MacFadden do with

 3     LexisNexis?

 4     A.     He can do name, address, verification.

 5     Q.     Do you know if Mr. MacFadden utilized

 6     LexisNexis?

 7     A.     I do not.

 8     Q.     In general, then, does -- with

 9     LexisNexis, is Mr. MacFadden able to look up

10     cases?

11                    MS. SIMONETTI:  What do you

12     mean by cases?

13     BY MR. LOKER:

14     Q.     I don't know if their version of the

15     LexisNexis would have this, but one aspect of

16     LexisNexis allows people to look up published

17     decisions from courts.  Can Mr. MacFadden do

18     that?

19     A.     He cannot.  The access through which

20     they have in LexisNexis is specific to only

21     customer -- or information such as name,

22     address information.

23     Q.     Okay.

24     A.     That's all.  None of the additional
```

Page  28

1   features that I understand LexisNexis provides

2   are available to the dispute representative.

3   Q.    Okay.   And after the -- switching gears

4   a little bit, with the Sallie Mae/Navient, was

5   that a name change or a split?  Can you

6   explain that?

7                MS. SIMONETTI:  Objection to

8   the extent it calls for some kind of a legal

9   analysis or conclusion, but you can give your

10  understanding.

11               THE WITNESS:  My understanding

12  is a split into two distinct companies.

13  BY MR. LOKER:

14  Q.    What does Navient do?

15  A.    Well, Navient services student loans.

16  It also services and manages like accounts

17  receivable -- or I'm sorry, accounts payable

18  -- for other companies.

19  Q.    What do you mean by services?

20  A.    Services meaning performs the servicing

21  of the loan, which would include, but not

22  limited to customer service, disputes

23  management, collection efforts, tasks such as

24  that, sending of statements.   Sorry.

Page 29

1    Q.    Right.  Does Navient fund the loans?

2    A.    I'm not familiar with the entire funding

3    process.   I don't believe they fund the

4    loans.

5    Q.    Right.  You mentioned collection

6    efforts.   Can you describe that process?

7    A.    My expertise is not in the collection

8    field, so what I understand is, from when --

9    when individuals do not make payments on time,

10   there are efforts that we will conduct in

11   order to assist the customer in bringing their

12   account back to the current status.

13   Q.    What are those efforts?

14   A.    As I stated, I am not an expert in

15   collections, so I would be guessing if

16   provided any answers regarding the efforts

17   that they conduct.

18   Q.    Does Navient send out letters, informing

19   the customers they are delinquent?

20   A.    I believe so, but again --

21   Q.    Does Navient place phone calls to

22   customers, telling them they are delinquent?

23   A.    I believe so.

24   Q.    Are you familiar with Navient filing any

Page 30

EXHIBIT E
PAGE 106

```
 1    collection actions against customers when they
 2    are delinquent?
 3    A.    I'm not familiar with that practice.
 4    Q.    And who would be more familiar with the
 5    collection efforts by Navient?
 6    A.    An individual that works or manages in
 7    the collections area.
 8    Q.    Such as?
 9    A.    Director of Collections.
10    Q.    And who is that?
11    A.    There is multiple folks.  Specific to
12    your questions, I'm not sure who would be the
13    most appropriate individual to answer your
14    questions pertaining to collections.
15    Q.    What is Mr. Bocanegra's title again?
16    A.    He is a fraud lead.
17    Q.    I believe you said you worked with
18    fraud; is that right?
19    A.    I'm sorry, repeat that.
20    Q.    I think, when I asked initially, you
21    said you work with credit reporting and fraud;
22    is that correct?
23    A.    That's correct.
24    Q.    What do you do with fraud?
```

Page 31

EXHIBIT E
PAGE 107

1    A.    I am responsible for the fraud

2    operations and investigations, allegations

3    piece of -- for Navient.

4    Q.    What did that entail?

5    A.    It entails overseeing the lead along

6    with the agents that are conducting the

7    investigations and also receiving the

8    allegations of fraud.

9    Q.    Are you familiar with any fraud

10   investigation that is done with regard to this

11   account?

12   A.    Through the research for this

13   deposition, I am aware of the research that

14   was conducted on this account.

15   Q.    When was that research conducted,

16   approximately?

17   A.    When did I do the research on this

18   account?

19   Q.    No, I'm sorry, the fraud research.   Not

20   you, specifically.

21   A.    I think it was pre -- in 2015 and prior.

22   Q.    Okay.   Was there additional fraud

23   research done following the dispute in this

24   action?

Page 32

1    A.    I don't believe so, but so after the

2    dispute, I don't --

3    Q.    Right.

4    A.    I don't recall any additional fraud

5    investigation being conducted.

6    Q.    The fraud investigation that you

7    reviewed, where did you find that information?

8    A.    It was part of the prep work for this

9    deposition.

10   Q.    Where did the prep work come from?

11              MS. SIMONETTI:  He reviewed

12   the prior production, Matt, the documents

13   produced in the other case.

14   BY MR. LOKER:

15   Q.    Aside from the production, did you

16   review any of the other account notes?

17   A.    I did.

18   Q.    Specifically, with regard to fraud, have

19   you reviewed account notes?

20   A.    I did.

21   Q.    And I believe the general timeframe for

22   those fraud account notes was 2015 and

23   slightly prior; is that correct?

24   A.    I believe, yes.

Page 33

1    Q.    Are those account notes kept

2    chronologically?

3    A.    They are.

4    Q.    You didn't see any fraud investigation

5    after the 2015-ish fraud investigation?

6    A.    Fraud investigation after -- I don't

7    recall.

8    Q.    Do you know if Mr. MacFadden reviewed

9    any fraud allegations or did a fraud

10   investigation?

11   A.    Mr. MacFadden did not work in the fraud

12   area, so I don't believe he would have done

13   any fraud investigation.

14   Q.    Vendors such as Mr. MacFadden aren't

15   trained to do any sort of fraud investigation?

16   A.    They are -- the training for a dispute

17   representative is the how and what to use in

18   regards to a dispute that's received by

19   Navient.

20   Q.    Is there an aspect of that training that

21   deals with a fraud claim?

22   A.    He would not -- they would not take

23   fraud claims as a dispute analyst.

24   Q.    But as a dispute analyst, it would be he

Page 34

1    receives disputes made to the credit bureaus?

2    A.    Correct.

3    Q.    If that dispute contains a fraud claim,

4    what does he do upon receipt?

5    A.    He was trained to follow the procedures

6    on how to respond to a dispute that's received

7    from the credit reporting agencies specific to

8    the dispute code at the customer or the agency

9    provided.

10   Q.    And what are those procedures?

11   A.    The procedures that are provided to the

12   dispute folks?

13   Q.    Right.

14   A.    There is specific procedures that are

15   provided to each of them in training that

16   reviews the appropriate way to respond to a

17   dispute based on the information that's

18   provided from e-OSCAR along with the credit

19   reporting agencies.

20   Q.    And what are the specific procedures

21   that you referenced?

22   A.    Well, each dispute code has different

23   requirements, so there is no one procedure

24   that will cover all disputes.

Page 35

1    Q.    Do you know what dispute code is

2    associated with the dispute in this action?

3    A.    I do.

4    Q.    What was it?

5    A.    Dispute Code 103.

6    Q.    What does that mean?

7    A.    That the credit reporting agency

8    received a notification pertaining to the

9    specific account that there may be identity

10   theft conducted.

11   Q.    And upon receipt of such a dispute code,

12   what is Mr. MacFadden trained to do?

13   A.    He is trained to look at what's received

14   from the credit reporting agency pertaining to

15   the -- pertaining to the account and respond

16   based on the information that we have

17   available to his best knowledge to answer the

18   disputed information.

19                  MS. SIMONETTI:  Matt, whenever

20   is a good time to take a break, can you just

21   let me know?  I just need to call someone for

22   about five minutes.  Whenever it is a good

23   time.

24                  MR. LOKER:  Let's see.   I

Page 36

```
 1    will just ask a couple more questions, and
 2    then we can take a break.
 3                    MS. SIMONETTI:  Yes, that's
 4    fine, thank you.
 5    BY MR. LOKER:
 6    Q.    So Mr. MacFadden's review is based upon
 7    the -- his investigation, rather, is based
 8    upon the dispute, as well as the internal
 9    account notes?
10    A.    Based on -- yeah, the dispute, account
11    notes, and other information available to him
12    on the account.
13    Q.    Such as what?
14    A.    Such as Metro 2 data that was furnished
15    on the account.   Such as --
16    Q.    Anything else?
17    A.    Name, address, application.   His
18    training has trained him to use the resources
19    that he would need to respond to the dispute,
20    which could come from any one of the systems
21    that we have previously discussed, whether it
22    be --
23    Q.    Okay.   This is a dispute in the systems
24    that we discussed?
```

Page 37

1    A.    I'm sorry, repeat that.

2    Q.    The scope of the information available

3    to Mr. MacFadden would be the dispute sent to

4    Navient by the credit bureaus and the systems

5    we discussed earlier?

6    A.    The image system that we discussed

7    earlier, CLASS, would be the systems that he

8    would predominantly use to respond to a

9    dispute.

10              MR. LOKER:  Okay, let's take a

11   break there, and then, whenever you all are

12   ready, just let me know.  We don't have to set

13   a definite time on that.

14              MS. SIMONETTI:  Okay, it will

15   just be a few minutes.  Thank you.

16              MR. LOKER:  We will go off the

17   record then.

18                   - - -

19              (Whereupon a short break was

20   taken at this time.)

21                   - - -

22   BY MR. LOKER:

23   Q.    Mr. Jones, you understand you are still

24   under oath?

Page  38

EXHIBIT E
PAGE 114

1    A.    Understood.

2    Q.    So we will jump to both Exhibits 10 and

3    11.

4                    MS. SIMONETTI:  Let's try to

5    keep them in order.   Hang on for a second.

6    10 and 11?

7                    MR. LOKER:  Yes, please.

8    BY MR. LOKER:

9    Q.    And Exhibit 10 for the record is the

10   Complaint in this action, which is Andra Jay,

11   as Executor of the Estate of Rita Cutler

12   versus Navient Solutions, Inc., et al.

13   Exhibit 11 is Navient's Answer to the

14   Complaint.

15                   Mr. Jones, have you seen

16   either of these exhibits before?

17   A.    Yes.

18   Q.    And I'm not going to ask you to have

19   memorized the exhibits.   What I will do is

20   ask questions about specific paragraphs.  And

21   in doing so, I'm only looking for your factual

22   understanding of the responses, so I'm not

23   trying to test you legally or anything of that

24   sort.

Page 39

1    A.    Understood.

2    Q.    Let's see.   And the reason we have both

3    Exhibits 10 and 11 in front of you is because

4    the Complaint is drafted by me, and that makes

5    the allegations, the Answers are drafted by

6    your counsel in response to those specific

7    allegations, so they go hand in hand.

8              So, for example, Paragraph 52

9    of the Complaint, which appears on Page 8 of

10   Exhibit 10, there is an allegation in there,

11   and the corresponding answer is also numbered

12   Paragraph 52, and that's on Page 9 of

13   Exhibit 11.

14             Do you have those in front of

15   you?

16   A.    Yes.

17   Q.    Paragraph 52 of the Complaint states,

18   "Due to these continued collection efforts,

19   Ms. Cutler, through Ms. Jay, initiated an

20   action entitled Andra Jay versus Navient,

21   Inc., et al; CV13-2142 MWF (DTBx), in the

22   Central District of California on

23   November 21st, 2013."  And I call that Jay 1

24   through the remainder of the Complaint.

Page  40

EXHIBIT E
PAGE 116

1                    Do you see where I read that?

2     A.    I do.

3     Q.    And the corresponding Answer states -- I

4     will read it in its totality, actually,

5     instead of summarizing.   Answering Paragraph

6     52 of the Complaint, NSI, which refers to

7     Navient, states that the action entitled Andra

8     Jay versus Navient, Inc., et al; CV13-2142 MWF

9     (DTBx) speaks for itself, and then I have each

10    and every allegation inconsistent therewith.

11                   Do you see where I read that?

12    A.    I do.

13    Q.    And I believe we discussed the -- what I

14    called Jay 1 earlier.   And you are familiar

15    with this action?

16    A.    Can you be specific on what Jay 1 is?

17    Q.    Yes, that's just the -- so you know how

18    you reviewed previous discovery responses?

19                   MS. SIMONETTI:  I'm sorry,

20    Matt, he reviewed the discovery responses in

21    this case.  He reviewed the production in the

22    prior case.

23                   MR. LOKER:  I see, I see.

24    BY MR. LOKER:

                                        Page 41

1    Q.   So production from the prior case, do

2    you remember reviewing that?

3    A.   I do.

4                MS. SIMONETTI:  He didn't

5    review any of the pleadings from the prior

6    case.

7                MR. LOKER:  Okay.

8    BY MR. LOKER:

9    Q.   So just as a matter of background, the

10   discovery from the prior case came from Jay 1,

11   so Ms. Jay, in 2013, filed a different case

12   against Navient.  That's what I am referring

13   to as Jay 1.  Does that make sense?

14   A.   Yes.

15   Q.   You are familiar with Jay 1 now?

16   A.   Yes.

17   Q.   Did you review the settlement agreement

18   from Jay 1?

19               MS. SIMONETTI:  He did, yes.

20   It is in there, yes.

21               THE WITNESS:  Yes.

22   BY MR. LOKER:

23   Q.   Okay, thank you.  We will get to that

24   later.  And he answered some of my questions,

Page 42

```
 1      so I'm going to skip over certain paragraphs.
 2      And to guide the discussion, Paragraph 55
 3      deals with reporting to the credit bureaus.
 4      The specific allegations aren't necessarily
 5      important, but you are familiar that Navient
 6      reported this account to the credit bureaus?
 7      A.    Repeat that.  Navient reported to?
 8      Q.    The account to the credit bureaus?
 9      A.    I am aware that Navient has reported
10      this account to the credit bureaus.
11      Q.    But how it is reporting today, you
12      aren't sure of; is that right?
13      A.    The exact status of how it was reported,
14      I am unsure of.  I am sure it is an active
15      account.
16      Q.    It is active and open, you mean?
17      A.    Correct.
18      Q.    Okay, so active means that there is
19      still money due to Navient?
20      A.    Correct.
21      Q.    The next paragraph, 56, and again, this
22      is a general concept, deals with disputes that
23      are sent to the credit bureaus.  And I can't
24      remember, did you review the exact disputes?
```

Page 43

EXHIBIT E
PAGE 119

1    A.    Yes.

2    Q.    And those were imaged?

3    A.    They were imaged in our image system,

4    correct.

5    Q.    Okay.  The ACDV, is that also on your

6    image system?

7    A.    That is the image that I am referring to

8    that's in our image system.

9    Q.    I get it.  Aside from the ACDV, do you

10   know what else is in the image system?

11   A.    Specific to the ACDV?

12   Q.    Right.

13   A.    I do.

14   Q.    What is that?

15   A.    There is a letter in response to the

16   dispute that Navient had sent.

17   Q.    Paragraph 85, which is on Page 12 of the

18   Complaint --

19                MS. SIMONETTI:  Matt, can I

20   also just add, he looked at the exhibits from

21   Andra Jay's transcript in this case.  That's

22   the last thing he looked at, just to make sure

23   I get everything.

24                MR. LOKER:  Sure, I appreciate

Page 44

```
1    it.
2    BY MR. LOKER:
3    Q.    85 specifically states, "On August 8,
4    2016, Navient sent a written communication
5    acknowledging receipt of communications from
6    the credit bureaus that Plaintiff had disputed
7    the inaccurate credit reporting."
8                  Is that one of the letters
9    that you were referring to just moments ago?
10   A.    Yes.
11   Q.    Do you know if -- I think you said
12   earlier that there were multiple letters sent
13   to Ms. Jay; is that right?
14   A.    There have been on this account, through
15   the entire history of the account, more than
16   one communication that has been sent.
17   Q.    Of course.   What about specifically
18   after the most recent dispute that we are
19   discussing?  Was there more than one letter
20   sent to Ms. Jay?
21   A.    After the dispute letter that we are
22   discussing, I don't recall any additional
23   letters being sent.
24   Q.    Earlier, you said that the account is
```

Page 45

EXHIBIT E
PAGE 121

1    currently being reported as active to the

2    credit bureaus; is that right?

3    A.    It is currently an active account,

4    correct.

5    Q.    Do you know why it is being reported as

6    an active account?

7    A.    I do.

8    Q.    Why is that?

9    A.    There is a responsible party that is on

10   the account.

11   Q.    Who is that party?

12   A.    That party is Kevin Smith, I believe, is

13   the name.

14   Q.    Right.   Aside from Kevin Smith, is

15   there anyone else that is responsible for the

16   account?

17   A.    Not at this time.

18   Q.    Okay.   And Ms. Cutler is not

19   responsible for the account?

20   A.    Not at this time.

21   Q.    Do you know why it is being reported to

22   the credit bureaus that -- to Ms. Cutler's

23   credit report that is an active account?

24   A.    I don't believe it is currently being

Page 46

1   reported as an active account to her credit

2   report.

3   Q.   And I believe you stated that it is

4   being reported as an active account?

5   A.   The account is being reported as an

6   active account.

7   Q.   But not specifically to Ms. Cutler's

8   credit report?

9   A.   That's correct.

10   Q.   When Mr. MacFadden verified the account,

11   what was the disposition from that?

12   A.   Could you repeat that question?

13   Q.   Yes, I will rephrase it.

14              So when Mr. MacFadden verified

15   the account, how is the account reported to

16   Ms. Cutler's credit report?

17   A.   Do you have a document that I could use

18   to review the actual ACDV?

19   Q.   Yes.  It is the next exhibit, actually,

20   Number 12.   There are two, Exhibit 12 and 13

21   are the ACDV's.

22   A.   Thank you.

23   Q.   For the record, Exhibit 12 was produced

24   by your counsel.   And do you know what a

Page 47

1    Bates stamp is?

2    A.    Repeat the question.

3    Q.    Yes.  A Bates stamp is in the bottom

4    right-hand corner.  In particular, Exhibit 12

5    goes from AJ_NSL 000001 to 3.    That's the

6    Bates stamp.   I'm going to refer to those.

7    During the course of discovery, documents come

8    from a number of sources, so your counsel, as

9    most counsel do, affixed a uniform numbering

10   system, so we are not referring to internal

11   pagination.   Do you understand that?

12   A.    Understood.

13   Q.    Okay.   So this first ACDV, I believe it

14   was Experian, and then, Exhibit 13, we have an

15   Equifax ACDV, which was produced by Equifax in

16   response to the subpoena.

17               Have you seen either of these

18   exhibits before?

19   A.    I have.

20   Q.    And does review of these exhibits help

21   you know that -- how the dispute was responded

22   to?

23   A.    They do.

24   Q.    And what do these exhibits tell you?

Page 48

Veritext Legal Solutions
866 299-5127

1    A.    It tells me that this dispute was

2    responded to on the 16th of August in 2016.

3    Q.    Okay, anything else?

4    A.    Well, it shows me what was received by

5    Navient from the credit reporting agency and

6    what was responded to by Navient back to

7    e-OSCAR and the credit reporting agency.

8    Q.    And Mr. MacFadden completed both of

9    these ACDV's?

10   A.    That's correct.

11   Q.    And I think you said that the ACDV's

12   tell you what was received; is that right?

13   A.    That's correct.

14   Q.    Where is that information reflected?

15   A.    It is reflected in the request data on

16   the -- where the Bates number is NSL -- sorry,

17   go ahead.

18   Q.    Does it tell you if any documents were

19   received along with the dispute?

20   A.    It would tell you if documents were

21   received along with the dispute.    In this

22   case, it indicates there were no documents

23   received with this dispute.

24   Q.    Where does it say that?  Oh, I see it.

Page 49

EXHIBIT E
PAGE 125

1    In the images?

2    A.    That's correct.

3    Q.    And how did -- what was the outcome of

4    this dispute?

5    A.    The response data that was provided back

6    on this dispute was data that was obtained

7    through our internal systems based on the

8    training and education that was provided on

9    how to respond to a Dispute Code 103.   That

10   data would be listed in the column to the

11   immediate right of request data, entitled

12   Response Data.

13   Q.    Okay.   And ultimately, how is the

14   account reporting after this dispute?

15   A.    The account?

16   Q.    Right, how the trade line reported to

17   the credit bureaus, open, closed, deleted?

18   A.    I would need more -- would need to be

19   more specific in regards to the account.

20   Q.    What specifics would help you answer

21   that question?

22   A.    Well, the account is currently being

23   reported under or to Kevin Smith.   This

24   dispute was specific to an individual on an

Page 50

1    account.

2    Q.    Right, okay.    How is the account

3    reported after this dispute to Ms. Cutler's

4    credit report?

5    A.    The account is reported active to Kevin

6    Smith.    Pertaining to this dispute and Ms.

7    Cutler, it is reported terminated.

8    Q.    Okay, where do you see that?

9    A.    Under -- halfway down, there is a field

10   called ECOA code, which is a standard Metro 2

11   field.

12   Q.    Right.    Deleted on -- sorry, does

13   terminated mean the account is deleted or what

14   does terminated mean?

15   A.    Terminated does not mean the account was

16   deleted.

17   Q.    What does it mean?

18   A.    Terminated means the individual that is

19   receiving the terminated code, the reporting

20   of that information for that specific

21   individual will stop at that point in which it

22   is terminated and no longer will be reported

23   for that specific individual.

24   Q.    If you look at the second page of

Page 51

1    Exhibit 12, we have an account history.   Do

2    you see that?

3    A.    I do.

4    Q.    And we have certain boxes in 2016 which

5    are empty, ranging from December -- well, I

6    guess it ranged from August 2016 up to

7    December 2016.   Prior to that, there are

8    dashes for January 2016 to July 2016.   Do you

9    know what the blank -- what is the difference

10   -- do you know the difference between blank

11   boxes and the dashes?

12   A.    I do.

13   Q.    What is the difference?

14   A.    The dashes represent that there was

15   nothing reported during those months.   The

16   blanks would indicate that those months

17   haven't occurred at the time in which it was

18   being reviewed.

19   Q.    Oh, I see.   Those months are after the

20   date of the dispute and the response?

21   A.    That's correct.

22   Q.    Got you.

23              And just on a general level,

24   is Navient reporting information to the credit

Page 52

1    bureau every 30 days?

2    A.    Navient reports at the end of each

3    month.

4    Q.    And the end of each month varies by --

5    the number of days in each month varies?

6    A.    Exactly.

7    Q.    Exhibit 13 is the ACDV from Equifax.

8    Does this ACDV also reflect a terminated

9    account?

10   A.    It reflects an individual that was

11   associated with the account was terminated.

12   Q.    Do you know how it is being reported --

13   did you review a dispute to Trans Union?

14   A.    I'm sorry, could you repeat that?

15   Q.    Yes.  Did you review a dispute that was

16   sent to Trans Union?

17   A.    I have not seen a dispute that was sent

18   to Trans Union.

19   Q.    Okay.  Let's see.  Let me go back to

20   my notes real quick.

21              Exhibit 14, can you get that

22   in front of you, please?

23              MS. SIMONETTI:  Can we clear

24   up any of these?

Page 53

1          MR. LOKER:  Yes, you can put

2    those aside.

3    BY MR. LOKER:

4    Q.    Exhibit 14 is a single page.

5    A.    Got it.

6    Q.    I believe this is the August 8, 2016

7    letter that we discussed earlier.  Is that

8    right?

9    A.    This is a letter that was sent on

10   August 8th, correct.

11   Q.    Have you seen this letter before?

12   A.    I did review this through the

13   preparation for this deposition.

14   Q.    Do you know why this letter was sent to

15   Ms. Cutler?

16   A.    I do.

17   Q.    Why is that?

18   A.    This letter was sent as a response to

19   the dispute that was received pertaining to

20   this individual.

21   Q.    Is that a dispute that was sent directly

22   to Navient or is this in response to a credit

23   bureau dispute?

24   A.    This is in response to the credit bureau

Page 54

1    dispute that we just previously looked at.

2    Q.    In Paragraph 2 of the letter, the second

3    sentence states, "Otherwise, you will continue

4    to be responsible for repayment of the debt,

5    and we may continue to report the information

6    to the credit reporting agencies."   Did I

7    read that right?

8    A.    Correct.

9    Q.    I believe you stated earlier that Ms.

10   Cutler is not responsible for repayment of the

11   debt?

12   A.    That's correct.

13   Q.    It is Kevin Jones that is responsible

14   for repayment of the debt?

15            MS. SIMONETTI:   Smith, Kevin

16   Smith.

17   BY MR. LOKER:

18   Q.    I'm sorry, you are Brad Jones.   Kevin

19   Smith?

20   A.    Kevin Smith is responsible for the

21   repayment of the debt.

22   Q.    Sorry about that.

23   A.    That's understood.

24   Q.    Exhibit 15, that's the final exhibit in

Page 55

Veritext Legal Solutions
866 299-5127

EXHIBIT E
PAGE 131

```
 1    the stack, if you could jump over to that?
 2                    MS. SIMONETTI:  15, okay, got
 3    it.
 4    BY MR. LOKER:
 5    Q.    And Exhibit 15 is the settlement
 6    agreement from Jay 1.  Have you seen this?
 7    A.    I have.
 8    Q.    When did you see this exhibit?
 9    A.    In preparation for the deposition, this
10    deposition.
11    Q.    Paragraph 3, which is on Page 2,
12    Exhibit 15, states in full, "Within 14 days of
13    the dismissal of the action with prejudice,
14    NSI -- which refers to Navient -- shall
15    release Rita Cutler from responsibility on the
16    loan and shall make no further efforts to
17    collect the remaining indebtedness on the loan
18    from Rita Cutler or her estate."  And the
19    final sentence goes on to Page 3, and that
20    states, "Nothing in this agreement releases
21    any obligations of Kevin Smith on the loans."
22                    Is that your understanding of
23    the current disposition of the account?
24    A.    That is my understanding.
```

Page 56

1    Q.    Are you familiar with Navient's policies

2    and procedures for collecting debts?

3                    MS. SIMONETTI:  I think we

4    covered this earlier.  Go ahead.

5                    THE WITNESS:  I am not

6    familiar with all the practices and procedures

7    in collecting debt.

8    BY MR. LOKER:

9    Q.    Okay.  Someone from the Collection

10   Department?

11   A.    Somebody from the Collection Department

12   would be better suited to answer questions

13   pertaining to collections.

14   Q.    And aside from the training, the ACDV,

15   you don't have personal knowledge about the

16   steps Mr. MacFadden took during his

17   investigation?

18   A.    That is correct.

19                    MR. LOKER:  Let's go off the

20   record for a couple of minutes.  I'm just

21   going to review my notes.  I don't believe I

22   have any additional questions.

23                    MS. SIMONETTI:  Okay.  Do you

24   want us to step out or put yourself on mute?

                                      Page 57

```
 1                    MR. LOKER:  You don't need to

 2      step out, but I think you need to put me on

 3      mute, so if you talk, I won't hear you.

 4                    MS. SIMONETTI:  We won't be

 5      chatting.  We will just sit quietly.

 6                         - - -

 7                    (Whereupon a short break was

 8      taken at this time.)

 9                         - - -

10                    MR. LOKER:  I don't have any

11      additional questions, so I will put a

12      stipulation on the record to relieve the court

13      reporter of her duties.  The transcript will

14      be sent to Ms. Simonetti's office.  From the

15      date of -- I'm sorry, from receipt, Ms.

16      Simonetti will forward it to Mr. Jones for

17      review, and he will have two weeks to review,

18      and if I don't hear about any changes, I will

19      assume none were made.

20                    If the transcript, the

21      original, is lost, stolen, destroyed or

22      unavailable for any reason, I will stipulate

23      that a certified copy can be used in its

24      place.
```

Page 58

```
 1                          So stipulated?

 2                          MS. SIMONETTI:  So stipulated.

 3                          MR. LOKER:  We will go off the

 4        record then.

 5                               - - -

 6                          (Witness excused.)

 7                               - - -

 8                          (Whereupon the deposition was

 9        concluded at 10:34 a.m.)

10                               - - -

11

12

13

14

15

16

17

18

19

20

21

22

23

24
```

Page 59

EXHIBIT E
PAGE 135

```
 1              ACKNOWLEDGMENT OF DEPONENT

 2                   I, _____, do

 3      hereby certify that I have read the foregoing

 4      pages __ to ___ and that the same is a correct

 5      transcription of the answers given by me to

 6      the questions therein propounded, except for

 7      the corrections or changes in form or

 8      substance, if any, noted in the attached

 9      Errata Sheet.

10

11      _____          _____

12      DATE                         SIGNATURE

13

14

15

16                   Subscribed and sworn to before

17      me this_____  day of _____,

18      2017.

19

20                   My commission expires:

21                   _____

22

23                   _____

24                   Notary Public


                                   Page 60
```

```
 1              C E R T I F I C A T E

 2

 3       I, Jeanne Christian, a Notary Public, do

 4     hereby certify that the foregoing deposition

 5     of BRAD JONES, was taken before me, pursuant

 6     to notice, at the time and place indicated;

 7     that said deponent was by me duly sworn to
        tell the truth, the whole truth, and nothing
 8     but the truth; that the testimony of said

 9     deponent was correctly recorded in machine

10     shorthand by me and thereafter transcribed
        under my supervision with computer-aided
11     transcription; that the deposition is a true

12     record of the testimony given by the witness;
        and that I am neither of counsel nor kin to
13     any party in said action, nor interested in

14     the outcome thereof.

15       WITNESS my hand and official seal this

16     10th day of October, 2017.

17

18

19

20

21

22     _____

23           Jeanne Christian

24             Notary Public

                                    Page 61
```

**[000001 - allegations]**

| **0** |
| --- |
| **000001**  48:5 |

| **1** |
| --- |
| **1**  1:24 10:3 40:23 41:14,16 42:10,13 42:15,18 56:6 |
| **10**  3:13 6:8 39:2,6 39:9 40:3,10 |
| **103**  36:5 50:9 |
| **10:34**  59:9 |
| **10th**  61:16 |
| **11**  3:14 39:3,6,13 40:3,13 |
| **12**  3:15 44:17 47:20,23 48:4 52:1 |
| **13**  3:16 47:20 48:14 53:7 |
| **14**  3:17 53:21 54:4 56:12 |
| **15**  3:18 55:24 56:2 56:5,12 |
| **16th**  49:2 |
| **1900**  2:15 |
| **1925**  2:15 |

| **2** |
| --- |
| **2**  19:12,15,17,19 19:22 20:1 21:7,9 21:12 37:14 51:10 55:2 56:11 |
| **2013**  40:23 42:11 |
| **2015**  32:21 33:22 34:5 |
| **2016**  45:4 49:2 52:4,6,7,8,8 54:6 |
| **2017**  1:19 60:18 61:16 |
| **204-7738**  2:17 |
| **21st**  40:23 |

| **245**  2:7 |
| --- |
| **264**  10:3 |
| **2659453**  1:23 |
| **29**  1:19 |

| **3** |
| --- |
| **3**  48:5 56:11,19 |
| **30**  6:12 9:4 23:4 53:1 |
| **300**  1:16 |
| **39**  3:13,14 |

| **4** |
| --- |
| **4**  3:5 |
| **400-6808**  2:9 |
| **424**  2:17 |
| **47**  3:15,16 |

| **5** |
| --- |
| **52**  40:8,12,17 41:6 |
| **53**  3:17 |
| **55**  3:18 43:2 |
| **56**  43:21 |

| **6** |
| --- |
| **6**  9:4 |
| **61**  1:24 |

| **8** |
| --- |
| **8**  3:12 6:8 40:9 45:3 54:6 |
| **8/8/16**  3:17 |
| **800**  2:9 |
| **815**  1:16 |
| **85**  44:17 45:3 |
| **8th**  54:10 |

| **9** |
| --- |
| **9**  3:12 8:19 40:12 |
| **90067**  2:16 |
| **92626**  2:8 |
| **9:00**  1:18 |

| **a** |
| --- |
| **a.m.**  1:18 59:9 |
| **a2**  19:9 |
| **ability**  24:1 |
| **able**  7:13 14:7,9 14:10,19 15:16 28:9 |
| **access**  14:19 25:13 25:15 27:24 28:19 |
| **account**  15:13,14 15:15,18,20,22 16:9,15,23 17:2,4 17:8 18:2,3,5,6,8 18:11,20,22 19:3 19:18 20:3,6,8,10 20:15,24 21:1,4,10 21:12,14,16,17,23 22:11,15,18,19 23:17 26:12 27:5 27:10 30:12 32:11 32:14,18 33:16,19 33:22 34:1 36:9 36:15 37:9,10,12 37:15 43:6,8,10,15 45:14,15,24 46:3,6 46:10,16,19,23 47:1,4,5,6,10,15 47:15 50:14,15,19 50:22 51:1,2,5,13 51:15 52:1 53:9 53:11 56:23 |
| **accounts**  29:16,17 |
| **accurate**  14:20 |
| **acdv**  3:15,16 24:12 24:14,16 44:5,9,11 47:18 48:13,15 53:7,8 57:14 |
| **acdv's**  47:21 49:9 49:11 |
| **acknowledging**  45:5 |

| **acknowledgment**  60:1 |
| --- |
| **act**  13:12,13,18 |
| **action**  18:5 32:24 36:2 39:10 40:20 41:7,15 56:13 61:13 |
| **actions**  31:1 |
| **active**  43:14,16,18 46:1,3,6,23 47:1,4 47:6 51:5 |
| **activities**  11:8 |
| **actual**  25:4 47:18 |
| **add**  44:20 |
| **additional**  28:24 32:22 33:4 45:22 57:22 58:11 |
| **address**  28:4,22 37:17 |
| **affixed**  48:9 |
| **agencies**  11:10,16 12:9,14 22:24 35:7,19 55:6 |
| **agency**  27:4,21 35:8 36:7,14 49:5 49:7 |
| **agents**  32:6 |
| **ago**  4:24 45:9 |
| **agreement**  3:18 42:17 56:6,20 |
| **ahead**  17:14 49:17 57:4 |
| **aided**  61:10 |
| **aj**  48:5 |
| **al**  39:12 40:21 41:8 |
| **allegation**  40:10 41:10 |
| **allegations**  32:2,8 34:9 40:5,7 43:4 |

Page 1

[allow - collection]

**allow** 14:3
**allowed** 7:1
**allows** 28:16
**amended** 9:1
**amount** 19:4
**analysis** 29:9
**analyst** 34:23,24
**analytics** 11:14
  12:12
**andra** 1:4 39:10
  40:20 41:7 44:21
**angeles** 2:16
**answer** 3:14 6:21
  7:4,21 8:10 17:10
  22:5 31:13 36:17
  39:13 40:11 41:3
  50:20 57:12
**answered** 42:24
**answering** 41:5
**answers** 6:2 7:24
  8:7 30:16 40:5
  60:5
**anticipate** 7:14
**apc** 2:5
**appears** 40:9
**apple** 19:10
**application** 37:17
**applied** 19:3
**appreciate** 7:21
  8:8 11:17 44:24
**appropriate** 31:13
  35:16
**approximately**
  1:18 32:16
**area** 31:7 34:12
**aside** 24:14,16,21
  25:2 33:15 44:9
  46:14 54:2 57:14
**asked** 6:5,11 31:20
**asking** 18:14

**aspect** 10:24 28:15
  34:20
**assist** 30:11
**associated** 36:2
  53:11
**assume** 6:22 58:19
**attached** 60:8
**attaches** 26:2
**au** 19:8
**august** 45:3 49:2
  52:6 54:6,10
**automated** 11:12
**available** 11:19
  23:9 29:2 36:17
  37:11 38:2
**avenue** 1:16 2:7
**avoid** 7:19
**aware** 16:11 20:16
  26:19 32:13 43:9

**b**

**b** 3:10 4:12 9:4
**back** 8:4 30:12
  49:6 50:5 53:19
**background** 10:10
  42:9
**bad** 6:19
**based** 6:6 12:13
  13:24 24:6 35:17
  36:16 37:6,7,10
  50:7
**basis** 8:13
**bates** 48:1,3,6
  49:16
**beginning** 1:17
  20:10
**believe** 14:24
  21:11 23:12 27:17
  30:3,20,23 31:17
  33:1,21,24 34:12
  41:13 46:12,24
  47:3 48:13 54:6

**55:9 57:21
**best** 6:2 36:17
**better** 57:12
**bit** 7:12 29:4
**blank** 52:9,10
**blanks** 52:16
**bocanegra** 10:19
**bocanegra's** 31:15
**bother** 20:22
**bottom** 48:3
**boxes** 52:4,11
**brad** 1:14 3:4 4:1
  4:10,12 10:9
  55:18 61:5
**break** 7:3,5 36:20
  37:2 38:11,19
  58:7
**breaks** 7:1
**breed** 6:15
**bringing** 30:11
**brought** 17:18
**bureau** 10:12,16
  10:17,24 11:2
  12:18 22:20 53:1
  54:23,24
**bureaus** 12:21
  21:18 22:12 35:1
  38:4 43:3,6,8,10
  43:23 45:6 46:2
  46:22 50:17

**c**

**c** 2:1 15:1,5 61:1,1
**california** 1:2 2:8
  2:16 40:22
**call** 36:21 40:23
**called** 13:21 14:14
  14:16,17 15:1
  25:8,10 41:14
  51:10
**calling** 19:16

**calls** 29:8 30:21
**capacity** 4:18
**caption** 8:24
**case** 10:2,4 12:24
  26:6,11 27:2
  33:13 41:21,22
  42:1,6,10,11 44:21
  49:22
**cases** 28:10,12
**category** 9:10
**central** 1:2 40:22
**century** 2:15
**certain** 43:1 52:4
**certified** 58:23
**certify** 60:3 61:4
**change** 29:5
**changes** 58:18
  60:7
**channel** 13:20
**channels** 13:17,19
**chatting** 58:5
**check** 9:12
**christian** 1:19
  61:3,23
**chronologically**
  34:2
**civil** 9:4
**claim** 34:21 35:3
**claims** 34:23
**class** 15:5,6,8
  25:13 38:7
**classroom** 16:4
**clear** 53:23
**closed** 21:5 50:17
**code** 19:2,5,8,11
  35:8,22 36:1,5,11
  50:9 51:10,19
**collect** 56:17
**collecting** 57:2,7
**collection** 29:23
  30:5,7 31:1,5

[collection - different]

40:18 57:9,11
**collections** 30:15
  31:7,9,14 57:13
**column** 50:10
**come** 33:10 37:20
  48:7
**comes** 11:8
**comment** 19:8,11
**commission** 60:20
**communication**
  45:4,16
**communications**
  45:5
**companies** 29:12
  29:18
**company** 10:21
  13:9 22:7
**complaint** 3:13
  39:10,14 40:4,9,17
  40:24 41:6 44:18
**completed** 24:11
  49:8
**compromise** 18:16
**computer** 61:10
**concept** 43:22
**concluded** 59:9
**conclusion** 29:9
**conduct** 30:10,17
**conducted** 32:14
  32:15 33:5 36:10
**conducting** 32:6
**conference** 5:19
  6:5
**confirm** 23:21
**confusing** 7:18
**consumer** 16:10
  26:2
**contains** 35:3
**contemporaneous**
  24:17

**content** 17:21
**continue** 55:3,5
**continued** 40:18
**conversation** 7:16
**copy** 58:23
**core** 14:11,21 15:1
  15:9,9,23 19:20,22
**corner** 48:4
**correct** 13:10 15:3
  15:7,18 19:24
  22:3 24:13 25:19
  28:1 31:22,23
  33:23 35:2 43:17
  43:20 44:4 46:4
  47:9 49:10,13
  50:2 52:21 54:10
  55:8,12 57:18
  60:4
**corrections** 60:7
**correctly** 61:9
**corresponding**
  40:11 41:3
**costa** 2:8
**counsel** 17:20 40:6
  47:24 48:8,9
  61:12
**couple** 37:1 57:20
**course** 23:5 45:17
  48:7
**court** 1:1 7:9,17
  58:12
**courts** 28:17
**cover** 8:19 35:24
**covered** 57:4
**credit** 10:12,16,16
  10:24 11:2,10,16
  12:7,8,9,11,14,18
  12:20 20:2 21:18
  22:12,19,24 27:3
  27:20 31:21 35:1
  35:7,18 36:7,14

38:4 43:3,6,8,10
  43:23 45:6,7 46:2
  46:22,23 47:1,8,16
  49:5,7 50:17 51:4
  52:24 54:22,24
  55:6
**current** 10:10
  20:14,18,23 21:1,8
  21:15,15 22:16
  30:12 56:23
**currently** 21:17
  22:11 46:1,3,24
  50:22
**customer** 28:21
  29:22 30:11 35:8
**customers** 15:11
  30:19,22 31:1
**cutler** 1:5 39:11
  40:19 46:18 51:7
  54:15 55:10 56:15
  56:18
**cutler's** 20:2 46:22
  47:7,16 51:3
**cv13-2142** 40:21
  41:8
**cv16-2026** 1:4

**d**

**d** 3:1 4:12
**d1** 2:7
**dashes** 52:8,11,14
**data** 11:14 12:10
  12:12,13 15:10,12
  19:19,22 20:1
  21:7,9,12,13 37:14
  49:15 50:5,6,10,11
  50:12
**date** 52:20 58:15
  60:12
**day** 11:5,5 23:4
  60:17 61:16

**days** 53:1,5 56:12
**deals** 34:21 43:3
  43:22
**debt** 55:4,11,14,21
  57:7
**debts** 57:2
**december** 52:5,7
**decisions** 28:17
**defendant** 2:12
  9:2
**defendants** 1:11
**definite** 38:13
**delaware** 1:16,17
**deleted** 50:17
  51:12,13,16
**delinquent** 21:22
  30:19,22 31:2
**department** 57:10
  57:11
**depending** 15:21
**deponent** 60:1
  61:7,9
**deposed** 4:20 5:14
**deposition** 1:14
  3:12 4:13 7:11 9:2
  20:5,13 32:13
  33:9 54:13 56:9
  56:10 59:8 61:4
  61:11
**describe** 13:19
  30:6
**description** 3:11
**designated** 9:3
**destroyed** 58:21
**determine** 15:22
  22:14
**develop** 12:12
**difference** 52:9,10
  52:13
**different** 18:9
  35:22 42:11

Veritext Legal Solutions
866 299-5127

**[difficult - filed]**

**difficult** 7:17
**direct** 11:13
**directly** 54:21
**director** 10:12,16
  10:23 31:9
**discovery** 10:5
  41:18,20 42:10
  48:7
**discuss** 9:16
**discussed** 37:21,24
  38:5,6 41:13 54:7
**discussing** 45:19
  45:22
**discussion** 43:2
**discussions** 16:24
  17:19,22
**dismissal** 56:13
**disposition** 20:14
  47:11 56:23
**dispute** 11:2 12:24
  13:18,23 14:2
  19:23 22:20,23
  23:3,6,15,19,22,24
  24:2,6,9,11,19,24
  25:5 26:1,3,20
  27:2,4,9,12,14,16
  27:20,21 29:2
  32:23 33:2 34:16
  34:18,23,24 35:3,6
  35:8,12,17,22 36:1
  36:2,5,11 37:8,10
  37:19,23 38:3,9
  44:16 45:18,21
  48:21 49:1,19,21
  49:23 50:4,6,9,14
  50:24 51:3,6
  52:20 53:13,15,17
  54:19,21,23 55:1
**disputed** 36:18
  45:6

**disputes** 11:12,13
  13:15 26:18 29:22
  35:1,24 43:22,24
**distinct** 29:12
**distinction** 6:1,17
**district** 1:1,2
  40:22
**document** 8:23 9:1
  9:5 26:2 47:17
**documents** 10:4
  14:4 20:12 25:22
  25:24 26:5,12,15
  26:17,19,22 27:1,3
  27:6,15,19,22
  33:12 48:7 49:18
  49:20,22
**dog** 6:11,14,14
**doing** 7:8 39:21
**donald** 12:23
  16:13 23:11
**double** 9:12
**drafted** 40:4,5
**dtbx** 1:4 40:21
  41:9
**due** 40:18 43:19
**duly** 4:2 61:7
**duties** 12:4 58:13

          **e**

**e** 2:1,1 3:1,10 4:12
  13:21 14:12 15:1
  23:1 25:8 35:18
  49:7 61:1,1
**earlier** 21:11 38:5
  38:7 41:14 45:12
  45:24 54:7 55:9
  57:4
**easier** 9:23
**east** 2:15
**ecoa** 51:10
**education** 14:1
  50:8

**effect** 5:20
**efforts** 29:23 30:6
  30:10,13,16 31:5
  40:18 56:16
**either** 39:16 48:17
**element** 10:18
**elements** 8:12
**eliminate** 9:19
**employee** 4:21
  13:18 14:10 15:15
  15:17,21
**employees** 15:24
  16:8,12
**empty** 52:5
**endurance** 7:2
**ensuring** 11:6
**entail** 14:11 16:3
  32:4
**entails** 32:5
**enter** 16:8
**entered** 16:14,17
**entire** 30:2 45:15
**entitled** 40:20 41:7
  50:11
**equifax** 1:8 48:15
  48:15 53:7
**errata** 60:9
**esquire** 2:6,14
**estate** 1:4 39:11
  56:18
**estimate** 6:2
**et** 39:12 40:21
  41:8
**events** 11:9
**everyday** 7:15
**exact** 43:13,24
**exactly** 53:6
**examination** 3:3
  4:5
**examined** 4:2

**example** 6:4 40:8
**excused** 59:6
**executor** 1:4 39:11
**exhibit** 3:12,13,14
  3:15,16,17,18 8:19
  8:20 39:9,13
  40:10,13 47:19,20
  47:23 48:4,14
  52:1 53:7,21 54:4
  55:24,24 56:5,8,12
**exhibits** 39:2,16
  39:19 40:3 44:20
  48:18,20,24
**expedite** 9:13
**experian** 48:14
**expert** 30:14
**expertise** 30:7
**expires** 60:20
**explain** 25:20 29:6
**extent** 8:6 29:8

          **f**

**f** 61:1
**factual** 8:13 39:21
**factually** 8:11
**fair** 6:23,24 7:22
  7:23
**familiar** 13:1
  16:16,19,21 30:2
  30:24 31:3,4 32:9
  41:14 42:15 43:5
  57:1,6
**far** 8:2 16:11 17:9
  22:16
**fcra** 5:5
**features** 29:1
**federal** 9:4
**feel** 6:20 20:21
**feet** 6:8
**field** 30:8 51:9,11
**filed** 16:9 42:11

Veritext Legal Solutions
866 299-5127

**[filing - jones]**

| | | | |
|---|---|---|---|
| **filing** 30:24 | **g** | **hear** 58:3,18 | **informal** 5:18 |
| **final** 55:24 56:19 | | **help** 17:6 48:20 | **information** 1:8 |
| **find** 33:7 | **g** 25:8 | 50:20 | 15:13,14,19,23 |
| **fine** 7:7 26:16 37:4 | **gears** 29:3 | **history** 20:8,11 | 16:8 17:8,18 23:9 |
| **first** 4:2 8:21 | **general** 16:14,19 | 45:15 52:1 | 24:7 28:21,22 |
| 14:21,24 25:21 | 18:20 28:8 33:21 | **hours** 16:4 | 33:7 35:17 36:16 |
| 48:13 | 43:22 52:23 | **houses** 15:10 | 36:18 37:11 38:2 |
| **fischer** 2:7 | **give** 6:9,10,21 7:4 | **huh** 8:1 | 49:14 51:20 52:24 |
| **five** 11:23,24 | 8:7,13 29:9 | **hum** 8:1 | 55:5 |
| 36:22 | **given** 60:5 61:12 | | **informing** 30:18 |
| **folks** 31:11 35:12 | **go** 5:13 8:4,20 | **i** | **initially** 31:20 |
| **follow** 35:5 | 10:9 17:9,14,21 | | **initiated** 27:9,22 |
| **followed** 24:8 | 38:16 40:7 49:17 | **identity** 36:9 | 40:19 |
| **following** 32:23 | 53:19 57:4,19 | **image** 14:11 25:8 | **innovis** 14:14,17 |
| **follows** 4:3 | 59:3 | 25:11 26:3,4 | **interested** 61:13 |
| **force** 5:20 | **goes** 48:5 56:19 | 27:22 38:6 44:3,6 | **internal** 19:18 |
| **foregoing** 60:3 | **going** 6:19 7:12,14 | 44:7,8,10 | 37:8 48:10 50:7 |
| 61:4 | 8:11 9:19 18:19 | **imaged** 26:5,10,17 | **investigation** |
| **form** 60:7 | 20:22 39:18 43:1 | 26:20 27:7,18 | 32:10 33:5,6 34:4 |
| **forward** 58:16 | 48:6 57:21 | 44:2,3 | 34:5,6,10,13,15 |
| **framed** 9:21 | **good** 6:3 7:8 36:20 | **images** 25:16,21 | 37:7 57:17 |
| **fraud** 10:13,18 | 36:22 | 25:22 50:1 | **investigations** |
| 31:16,18,21,24 | **govern** 6:1 | **imaging** 25:23 | 32:2,7 |
| 32:1,8,9,19,22 | **ground** 5:13 | **immediate** 50:11 | **ish** 34:5 |
| 33:4,6,18,22 34:4 | **grounds** 9:19 | **important** 5:16 | **issue** 22:8 |
| 34:5,6,9,9,11,13 | **group** 2:5 11:11 | 6:1 43:5 | |
| 34:15,21,23 35:3 | **guess** 6:3,9,10,13 | **inaccurate** 45:7 | **j** |
| **free** 6:20 20:21 | 52:6 | **include** 29:21 | |
| **friday** 1:18 | **guessing** 7:13 | **included** 27:16 | **j** 4:12 |
| **front** 5:21 40:3,14 | 30:15 | **inconsistent** 41:10 | **january** 52:8 |
| 53:22 | **guide** 43:2 | **indebtedness** | **jay** 1:4 39:10 |
| **full** 19:4 56:12 | **guidelines** 19:12 | 56:17 | 40:19,20,23 41:8 |
| **fund** 30:1,3 | | **indicate** 19:3 | 41:14,16 42:10,11 |
| **funding** 30:2 | **h** | 52:16 | 42:13,15,18 45:13 |
| **furnish** 12:10 | | **indicated** 61:6 | 45:20 56:6 |
| **furnished** 12:13 | **h** 3:10 | **indicates** 49:22 | **jay's** 44:21 |
| 37:14 | **half** 10:17 | **individual** 9:9 | **jayson** 10:19 |
| **furnishes** 11:15 | **halfway** 51:9 | 23:8 31:6,13 | **jeanne** 1:19 61:3 |
| **furnishing** 11:14 | **hand** 40:7,7 48:4 | 50:24 51:18,21,23 | 61:23 |
| **further** 56:16 | 61:15 | 53:10 54:20 | **job** 1:23 7:8,17 |
| | **hang** 17:5 39:5 | **individuals** 15:11 | **jobs** 12:4 |
| | **happened** 23:2 | 30:9 | **jones** 1:14 3:4 4:1 |
| | | | 4:10,12 38:23 |

Page 5

[jones - navient]

39:15 55:13,18
58:16 61:5
**july** 52:8
**jump** 7:16 8:17
17:23 39:2 56:1
**jury** 5:21

**k**

**kazerouni** 2:5
**kazlg.com** 2:10
**keep** 5:17 19:16
39:5
**kept** 24:10 34:1
**kevin** 46:12,14
50:23 51:5 55:13
55:15,18,20 56:21
**kin** 61:12
**kind** 29:8
**know** 5:13 6:14
7:3 8:21 10:19
11:19 12:22 13:7
18:20 19:5 21:17
22:1,2,4,8,10,22
23:16,18 26:21
27:15 28:5,14
34:8 36:1,21
38:12 41:17 44:10
45:11 46:5,21
47:24 48:21 52:9
52:10 53:12 54:14
**knowledge** 6:7
24:22 25:3 36:17
57:15
**knowledgeable**
22:6

**l**

**l** 15:5
**law** 2:5
**lawsuit** 5:2,7,9
16:9,14,24 18:5,15

**lawsuits** 16:17
**lawyer** 8:10
**lead** 7:18 31:16
32:5
**legal** 8:9,22 17:17
29:8
**legally** 39:23
**letter** 3:17 44:15
45:19,21 54:7,9,11
54:14,18 55:2
**letters** 27:8,11
30:18 45:8,12,23
**level** 52:23
**lexisnexis** 14:19
27:24 28:3,6,9,15
28:16,20 29:1
**limited** 29:22
**line** 16:5 50:16
**lisa** 2:14 17:18,20
**listed** 50:10
**litigation** 18:21,22
20:11
**little** 18:14 29:4
**llc** 1:9,10
**loan** 18:16 29:21
56:16,17
**loans** 29:15 30:1,4
56:21
**loker** 2:6 3:5 4:7
9:15 10:6,8 17:15
18:7,18,24 28:13
29:13 33:14 36:24
37:5 38:10,16,22
39:7,8 41:23,24
42:7,8,22 44:24
45:2 54:1,3 55:17
56:4 57:8,19 58:1
58:10 59:3
**long** 6:6 7:13,20
10:14

**longer** 51:22
**look** 22:15 28:9,16
36:13 51:24
**looked** 44:20,22
55:1
**looking** 6:2 39:21
**looks** 6:8
**los** 2:16
**lose** 7:5
**lost** 18:14 58:21
**lot** 26:14
**lsimonetti** 2:18
**lulu** 6:11

**m**

**m** 2:6,14 25:8
**macfadden** 12:23
14:3,7 16:13
19:21 23:11,16,24
24:18,23 25:4,13
27:24 28:2,5,9,17
34:8,11,14 36:12
38:3 47:10,14
49:8 57:16
**macfadden's** 37:6
**machine** 61:9
**mae** 19:13,17 29:4
**main** 11:16
**major** 11:10
**management**
10:12,17 11:2
29:23
**manages** 29:16
31:6
**market** 12:14
**material** 23:12
**matt** 33:12 36:19
41:20 44:19
**matter** 42:9
**matthew** 2:6
**mean** 15:6 18:5,5
28:12 29:19 36:6

43:16 51:13,14,15
51:17
**meaning** 29:20
**means** 43:18 51:18
**memorized** 39:19
**mentioned** 11:17
14:21 15:1 17:16
25:8 27:23 30:5
**mesa** 2:8
**met** 6:13
**metro** 19:12,15,17
19:19,22 20:1
21:7,9,12,13 37:14
51:10
**mind** 5:17
**minutes** 36:22
38:15 57:20
**ml** 2:10
**moments** 45:9
**money** 43:19
**month** 53:3,4,5
**months** 10:18
52:15,16,19
**multiple** 11:21
31:11 45:12
**mute** 57:24 58:3
**mwf** 1:4 40:21
41:8

**n**

**n** 2:1 3:1 4:12
**name** 4:8 5:6 9:9
13:11 28:4,21
29:5 37:17 46:13
**named** 12:23
**natural** 7:15 8:1
**nature** 5:1
**navient** 1:7 4:18
4:21 9:2 10:10
11:7,9,15,18,20,24
12:2,5 13:3,14,17
14:2,4,7,10 15:10

Page 6

[navient - price]

15:15,17,21 16:7
16:10,12 19:14,17
22:10,23 25:23
26:1 27:11,13
29:4,14,15 30:1,18
30:21,24 31:5
32:3 34:19 38:4
39:12 40:20 41:7
41:8 42:12 43:5,7
43:9,19 44:16
45:4 49:5,6 52:24
53:2 54:22 56:14
**navient's**  39:13
57:1
**necessarily**  43:4
**need**  7:2 20:20
36:21 37:19 50:18
50:18 58:1,2
**neither**  61:12
**never**  6:13 20:22
**non**  7:24
**notary**  1:20 60:24
61:3,24
**notated**  15:17 18:3
**noted**  15:22 60:8
**notes**  15:15,20
16:9,15,23 17:2,9
18:3,11,17,22
19:18 23:23 24:10
24:14,17 33:16,19
33:22 34:1 37:9
37:11 53:20 57:21
**notice**  1:15 3:12
9:1,8,9,24 10:1
61:6
**notification**  36:8
**november**  40:23
**nsi**  41:6 56:14
**nsl**  48:5 49:16
**number**  3:11 6:7
6:12 11:15,19

47:20 48:8 49:16
53:5
**numbered**  40:11
**numbering**  48:9

**o**

**o**  4:12 15:1
**oath**  5:17,24 38:24
**objected**  9:18
**objection**  29:7
**objectionable**
17:24
**objections**  10:1
**obligations**  56:21
**obtained**  50:6
**occur**  11:9
**occurred**  52:17
**october**  61:16
**office**  58:14
**official**  61:15
**oh**  12:8,22 13:13
19:11 49:24 52:19
**okay**  10:6,9,14,19
12:22 13:13,22
14:18 19:16 23:23
28:23 29:3 32:22
37:23 38:10,14
42:7,23 43:18
44:5 46:18 48:13
49:3 50:13 51:2,8
53:19 56:2 57:9
57:23
**olde**  13:21
**once**  4:17
**open**  21:5 43:16
50:17
**opened**  26:13
**operated**  13:20
**operations**  11:11
32:2
**opposed**  9:8

**oral**  1:14
**order**  30:11 39:5
**organizing**  11:8
**original**  58:21
**oscar**  13:21 14:12
23:1 35:18 49:7
**outcome**  50:3
61:14
**overseeing**  32:5

**p**

**p**  2:1,1
**page**  3:4,11 5:15
8:20,21 40:9,12
44:17 51:24 54:4
56:11,19
**pages**  1:24 10:3
60:4
**pagination**  48:11
**paragraph**  40:8
40:12,17 41:5
43:2,21 44:17
55:2 56:11
**paragraphs**  39:20
43:1
**park**  2:15
**part**  33:8
**particular**  8:24
9:10 48:4
**parties**  12:19
**party**  46:9,11,12
61:13
**payable**  29:17
**payment**  18:9
**payments**  30:9
**people**  22:13
28:16
**perform**  12:4
**performs**  29:20
**person**  9:3,10
12:23 22:6

**personal**  6:6 24:22
25:3 57:15
**pertaining**  31:14
36:8,14,15 51:6
54:19 57:13
**phone**  2:9,17
30:21
**piece**  32:3
**pieces**  23:8
**place**  7:6 30:21
58:24 61:6
**plaintiff**  1:5 45:6
**plaintiff's**  9:1
**plaintiffs**  2:3
**plan**  18:9
**pleadings**  8:22
42:5
**please**  4:9 39:7
53:22
**point**  11:7 51:21
**policies**  57:1
**policy**  16:20,21
**position**  10:11
**possible**  8:6
**pounds**  6:12
**practice**  31:3
**practices**  57:6
**pre**  18:21 32:21
**predominantly**
38:8
**prefill**  14:15,17
**prejudice**  56:13
**prep**  33:8,10
**preparation**  54:13
56:9
**prepared**  9:16
**previous**  41:18
**previously**  37:21
55:1
**price**  2:13

**[prior - respond]**

| | | | |
|---|---|---|---|
| **prior** 10:1,2 20:11 32:21 33:12,23 41:22 42:1,5,10 52:7 | 20:18 25:1 47:12 48:2 50:21 | **recorded** 61:9 | 55:5 |

**prior** 10:1,2 20:11
  32:21 33:12,23
  41:22 42:1,5,10
  52:7
**privilege** 17:22
**privileged** 17:7,18
**problems** 9:20
**procedure** 9:4
  35:23
**procedures** 14:1
  16:17 23:7 24:8
  35:5,10,11,14,20
  57:2,6
**process** 16:16 30:3
  30:6
**produced** 10:4
  33:13 47:23 48:15
**production** 10:2,2
  33:12,15 41:21
  42:1
**products** 12:12,15
**professional** 1:19
**propounded** 60:6
**provided** 16:6
  20:12 27:20 30:16
  35:9,11,15,18 50:5
  50:8
**provides** 29:1
**public** 1:20 60:24
  61:3,24
**publish** 12:11
**published** 28:16
**pure** 6:13
**pursuant** 1:15 9:3
  61:5
**put** 54:1 57:24
  58:2,11

**q**

**question** 6:20,22
  7:15,20 8:14,17
  17:13,24 18:13

20:18 25:1 47:12
  48:2 50:21
**questions** 7:12
  9:10,11 10:7 17:9
  17:17 31:12,14
  37:1 39:20 42:24
  57:12,22 58:11
  60:6
**quick** 53:20
**quietly** 58:5

**r**

**r** 2:1 4:12 15:1
  61:1
**ranged** 52:6
**ranging** 52:5
**read** 17:8 41:1,4
  41:11 55:7 60:3
**ready** 38:12
**real** 53:20
**reask** 25:1
**reason** 40:2 58:22
**recall** 5:8,9,11
  21:3,6,15,24 22:17
  26:10,15 33:4
  34:7 45:22
**receipt** 35:4 36:11
  45:5 58:15
**receivable** 29:17
**receive** 12:10
  15:16,24
**received** 14:1
  22:23 25:16,21
  27:19 34:18 35:6
  36:8,13 49:4,12,19
  49:21,23 54:19
**receives** 35:1
**receiving** 32:7
  51:19
**record** 4:9 38:17
  39:9 47:23 57:20
  58:12 59:4 61:12

**recorded** 61:9
**records** 11:15
**refer** 19:12 48:6
**referenced** 35:21
**referred** 13:9
**referring** 24:12
  25:17,24 42:12
  44:7 45:9 48:10
**refers** 41:6 56:14
**reflect** 17:2 53:8
**reflected** 18:10,17
  18:21 19:1 49:14
  49:15
**reflects** 53:10
**regard** 17:3 20:2
  26:17 32:10 33:18
**regarding** 16:9
  30:16
**regards** 16:22
  21:14 26:20 34:18
  50:19
**relations** 11:1
**relationship** 11:6
**release** 56:15
**releases** 56:20
**relieve** 58:12
**remainder** 40:24
**remaining** 56:17
**remember** 5:1,6
  7:11 13:11 42:2
  43:24
**repayment** 55:4
  55:10,14,21
**repeat** 4:19 14:23
  17:12 20:18 25:1
  31:19 38:1 43:7
  47:12 48:2 53:14
**rephrase** 6:20
  20:22 47:13
**report** 20:2 46:23
  47:2,8,16 51:4

55:5
**reported** 21:18,22
  22:1,11,14 43:6,7
  43:9,13 46:1,5,21
  47:1,4,5,15 50:16
  50:23 51:3,5,7,22
  52:15 53:12
**reporter** 1:20 7:9
  58:13
**reporter's** 7:17
**reporting** 11:3,10
  11:16 12:7,8,9,14
  22:24 27:4,21
  31:21 35:7,19
  36:7,14 43:3,11
  45:7 49:5,7 50:14
  51:19 52:24 55:6
**reports** 12:11 53:2
**represent** 52:14
**representative**
  8:10 29:2 34:17
**representing** 2:3
  2:12
**request** 49:15
  50:11
**require** 23:8
**requirement** 16:7
**requirements**
  35:23
**requiring** 16:17
  16:20
**research** 20:4,7
  32:12,13,15,17,19
  32:23
**researching** 26:11
**resolved** 18:9,15
  18:20
**resources** 37:18
**respond** 13:18,23
  14:2 35:6,16
  36:15 37:19 38:8

Veritext Legal Solutions
866 299-5127

[respond - split]

50:9
**responded** 12:24
　13:15 23:3,10,15
　23:20,22 24:2,6
　48:21 49:2,6
**responding** 23:6
　23:24 24:8,24
　25:5 27:13
**responds** 11:12
**response** 22:19
　27:4,8 40:6 44:15
　48:16 50:5,12
　52:20 54:18,22,24
**responses** 10:5
　39:22 41:18,20
**responsibility**
　56:15
**responsible** 11:1
　11:11,13 32:1
　46:9,15,19 55:4,10
　55:13,20
**retained** 26:3
**retains** 25:15
**reveal** 17:7
**review** 8:4 9:24
　14:4 21:7 22:18
　23:8 24:11 33:16
　37:6 42:5,17
　43:24 47:18 48:20
　53:13,15 54:12
　57:21 58:17,17
**reviewed** 20:5,11
　21:9,11,13 23:5
　24:3,7,20 27:1
　33:7,11,19 34:8
　41:18,20,21 52:18
**reviewing** 19:23
　24:18 42:2
**reviews** 35:16
**right** 5:12 7:6,9
　8:24 13:22 15:2

15:19 18:6 21:2
　23:2 25:9 26:14
　30:1,5 31:18 33:3
　35:13 43:12 44:12
　45:13 46:2,14
　48:4 49:12 50:11
　50:16 51:2,12
　54:8 55:7
**rita** 1:4 39:11
　56:15,18
**role** 10:15 11:5
　16:12
**room** 5:19 6:5
**rule** 9:4
**rules** 5:13

**s**

**s** 2:1 3:10 4:12
　15:5,5
**sallie** 19:13,16
　29:4
**save** 10:7
**scope** 38:2
**seal** 61:15
**second** 39:5 51:24
　55:2
**see** 9:8,21 14:8,9
　14:10 15:16 19:11
　19:21,21 22:19
　24:1 26:5 27:15
　27:23 34:4 36:24
　40:2 41:1,11,23,23
　49:24 51:8 52:2
　52:19 53:19 56:8
**seen** 8:22 9:5
　16:23 19:19 20:1
　26:11 39:15 48:17
　53:17 54:11 56:6
**send** 30:18
**sending** 29:24
**sense** 8:4 42:13

**sent** 25:22 26:1
　27:3,8,11,11,13
　38:3 43:23 44:16
　45:4,12,16,20,23
　53:16,17 54:9,14
　54:18,21 58:14
**sentence** 55:3
　56:19
**september** 1:18
**service** 29:22
**services** 1:8 29:15
　29:16,19,20
**servicing** 29:20
**set** 38:12
**settled** 18:2 19:4
**settlement** 3:18
　17:3 18:1 42:17
　56:5
**sheet** 60:9
**short** 38:19 58:7
**shorthand** 61:10
**shows** 49:4
**side** 8:24
**signature** 60:12
**simonetti** 2:14
　9:14,17 17:5,14
　18:4,12 28:11
　29:7 33:11 36:19
　37:3 38:14 39:4
　41:19 42:4,19
　44:19 53:23 55:15
　56:2 57:3,23 58:4
　58:16 59:2
**simonetti's** 58:14
**single** 54:4
**sit** 26:15 58:5
**sitting** 5:21 6:4 8:3
　23:14
**six** 10:18
**skip** 43:1

**slightly** 33:23
**smith** 46:12,14
　50:23 51:6 55:15
　55:16,19,20 56:21
**solutions** 1:7 9:3
　39:12
**somebody** 57:11
**sorry** 4:19 12:6
　14:16,23 15:16
　19:16 20:19,20
　23:11 29:17,24
　31:19 32:19 38:1
　41:19 49:16 51:12
　53:14 55:18,22
　58:15
**sort** 8:12 11:4
　15:12,19 17:3
　18:15 24:17 25:12
　34:15 39:24
**sources** 48:8
**speaking** 12:20
**speaks** 41:9
**special** 19:8,11
**specific** 14:5 16:12
　16:20 18:1 19:2
　21:3,14 23:19
　26:12 27:2 28:20
　31:11 35:7,14,20
　36:9 39:20 40:6
　41:16 43:4 44:11
　50:19,24 51:20,23
**specifically** 12:5
　12:18,20 18:19
　19:13 20:9 23:10
　26:21 27:6 32:20
　33:18 45:3,17
　47:7
**specifics** 50:20
**spell** 4:8,11
**split** 29:5,12

Veritext Legal Solutions
866 299-5127

[stack - use]

| | | | |
|---|---|---|---|
| **stack** 56:1 | 26:4 38:6 44:3,6,8 | 49:11 57:3 58:2 | **transcription** 60:5 |
| **stamp** 48:1,3,6 | 44:10 48:10 | **third** 12:18 | 61:11 |
| **standard** 51:10 | **systems** 14:6,9 | **three** 11:10,16 | **trial** 5:10 |
| **state** 4:8 | 19:20 25:7 37:20 | 12:9 | **true** 61:11 |
| **stated** 30:14 47:3 | 37:23 38:4,7 50:7 | **throw** 6:7 | **truth** 61:7,7,8 |
| 55:9 | **t** | **time** 13:7 23:14,20 | **try** 39:4 |
| **statements** 29:24 | | 23:21 26:13 30:9 | **trying** 7:19 39:23 |
| **states** 1:1 40:17 | **t** 3:10 61:1,1 | 36:20,23 38:13,20 | **two** 10:17 27:1,8 |
| 41:3,7 45:3 55:3 | **table** 6:5 | 46:17,20 52:17 | 27:11 29:12 47:20 |
| 56:12,20 | **take** 7:1,5 24:18 | 58:8 61:6 | 58:17 |
| **status** 20:23 21:1,8 | 34:22 36:20 37:2 | **timeframe** 23:4 | **type** 6:15 11:8 |
| 21:15,16 22:17 | 38:10 | 33:21 | **u** |
| 30:12 43:13 | **taken** 1:15 4:13 | **times** 4:16 | |
| **step** 57:24 58:2 | 38:20 58:8 61:5 | **title** 8:23 10:11 | **u** 19:10 |
| **steps** 24:23 25:4 | **talk** 17:17 58:3 | 31:15 | **uh** 8:1 |
| 57:16 | **talking** 12:17 | **today** 5:16 8:3 | **ultimately** 50:13 |
| **stipulate** 58:22 | **task** 12:11 | 22:15 26:13,16 | **um** 8:1 |
| **stipulated** 59:1,2 | **tasks** 11:5 12:4 | 43:11 | **unavailable** 58:22 |
| **stipulation** 58:12 | 29:23 | **tool** 14:14,16 | **unclear** 8:5 |
| **stolen** 58:21 | **telephonically** 2:4 | **topics** 9:11,16,18 | **understand** 5:22 |
| **stop** 51:21 | **tell** 48:24 49:12,18 | 9:20 | 6:16 18:13 20:21 |
| **stored** 25:23 | 49:20 61:7 | **total** 11:19 | 26:14 29:1 30:8 |
| **student** 29:15 | **telling** 30:22 | **totality** 41:4 | 38:23 48:11 |
| **subpoena** 48:16 | **tells** 49:1 | **trade** 50:16 | **understanding** |
| **subscribed** 60:16 | **terminated** 51:7 | **trained** 23:13,18 | 8:13 29:10,11 |
| **substance** 60:8 | 51:13,14,15,18,19 | 24:21 25:2 34:15 | 39:22 56:22,24 |
| **suite** 1:16 2:15 | 51:22 53:8,11 | 35:5 36:12,13 | **understood** 5:23 |
| **suited** 57:12 | **terms** 18:1 | 37:18 | 6:18,22 8:15,16 |
| **summarizing** 41:5 | **test** 7:2 8:11 39:23 | **trainer** 16:5 | 39:1 40:1 48:12 |
| **supervision** 61:10 | **testified** 4:2 8:6 | **training** 13:24 | 55:23 |
| **supposed** 16:1 | **testimony** 61:8,12 | 15:24 16:3,4,5,6 | **undoubtedly** 6:19 |
| **sure** 5:15 31:12 | **thank** 37:4 38:15 | 23:7,12 34:16,20 | **unicorn** 19:10 |
| 43:12,14 44:22,24 | 42:23 47:22 | 35:15 37:18 50:8 | **uniform** 48:9 |
| **switching** 29:3 | **theft** 36:10 | 57:14 | **union** 1:9 53:13,16 |
| **sworn** 4:2 60:16 | **thereof** 61:14 | **trans** 1:9 53:13,16 | 53:18 |
| 61:7 | **therewith** 41:10 | 53:18 | **unit** 2:7 |
| **system** 13:24 14:3 | **thing** 5:16 7:3,24 | **transcribed** 61:10 | **united** 1:1 |
| 14:5,11,11,21,24 | 44:22 | **transcript** 7:18 | **unsure** 43:14 |
| 15:4,6,8,9,9,23 | **things** 12:15 17:16 | 8:5 44:21 58:13 | **use** 11:18 25:10 |
| 16:1,18 19:22 | **think** 9:20 18:13 | 58:20 | 34:17 37:18 38:8 |
| 25:10,12,15,20,23 | 25:7,17 27:23 | | 47:17 |
| | 31:20 32:21 45:11 | | |

Veritext Legal Solutions
866 299-5127

[uses - yield]

| | |
|---|---|
| **uses**  11:20,24  15:10 | **work**  13:3,6,8  31:21 33:8,10  34:11 |
| **utilized**  28:5 | **worked**  13:12  31:17 |
| **utilizes**  19:17 | **works**  31:6 |
| **v** | **written**  45:4 |
| **v**  1:6 | **x** |
| **varies**  53:4,5 | **x**  3:1,10 |
| **various**  9:18 | **y** |
| **vedder**  2:13 | **yeah**  7:7 37:10 |
| **vedderprice.com**  2:18 | **year**  4:24 |
| **vendor**  11:1,7 13:8 | **years**  10:17 |
| **vendors**  11:18,18  11:19,21 12:1,2,4  12:8,17 34:14 | **yield**  20:7 |
| **verbal**  7:24 8:7 | |
| **verification**  28:4 | |
| **verified**  22:20,22  47:10,14 | |
| **verifying**  23:17 | |
| **veritext**  1:15 | |
| **version**  28:14 | |
| **versus**  39:12 40:20  41:8 | |
| **w** | |
| **want**  5:14 6:3 9:11  57:24 | |
| **way**  18:10 35:16 | |
| **website**  13:20 | |
| **weeks**  58:17 | |
| **weigh**  6:11 | |
| **went**  5:9 | |
| **wilmington**  1:16  1:17 | |
| **winded**  7:13,20 | |
| **witness**  9:13 17:6  17:12 18:23 29:11  42:21 57:5 59:6  61:12,15 | |

Federal Rules of Civil Procedure

Rule 30


(e) Review By the Witness; Changes.

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:

(A) to review the transcript or recording; and

(B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them.

(2) Changes Indicated in the Officer's Certificate. The officer must note in the certificate prescribed by Rule 30(f)(1) whether a review was requested and, if so, must attach any changes the deponent makes during the 30-day period.


DISCLAIMER:  THE FOREGOING FEDERAL PROCEDURE RULES ARE PROVIDED FOR INFORMATIONAL PURPOSES ONLY. THE ABOVE RULES ARE CURRENT AS OF SEPTEMBER 1, 2016.  PLEASE REFER TO THE APPLICABLE FEDERAL RULES OF CIVIL PROCEDURE FOR UP-TO-DATE INFORMATION.

VERITEXT LEGAL SOLUTIONS
COMPANY CERTIFICATE AND DISCLOSURE STATEMENT

Veritext Legal Solutions represents that the
foregoing transcript is a true, correct and complete
transcript of the colloquies, questions and answers
as submitted by the court reporter. Veritext Legal
Solutions further represents that the attached
exhibits, if any, are true, correct and complete
documents as submitted by the court reporter and/or
attorneys in relation to this deposition and that
the documents were processed in accordance with
our litigation support and production standards.

Veritext Legal Solutions is committed to maintaining
the confidentiality of client and witness information,
in accordance with the regulations promulgated under
the Health Insurance Portability and Accountability
Act (HIPAA), as amended with respect to protected
health information and the Gramm-Leach-Bliley Act, as
amended, with respect to Personally Identifiable
Information (PII). Physical transcripts and exhibits
are managed under strict facility and personnel access
controls. Electronic files of documents are stored
in encrypted form and are transmitted in an encrypted
fashion to authenticated parties who are permitted to
access the material. Our data is hosted in a Tier 4
SSAE 16 certified facility.

Veritext Legal Solutions complies with all federal and
State regulations with respect to the provision of
court reporting services, and maintains its neutrality
and independence regardless of relationship or the
financial outcome of any litigation. Veritext requires
adherence to the foregoing professional and ethical
standards from all of its subcontractors in their
independent contractor agreements.

Inquiries about Veritext Legal Solutions'
confidentiality and security policies and practices
should be directed to Veritext's Client Services
Associates indicated on the cover of this document or
at www.veritext.com.

# EXHIBIT F

# PLAINTIFF'S EXHIBIT 13

---

### In The Case Of

*Andra Jay as Executor of the Estate of Rita Cutler,*

**v.**

*Navient Solutions, Inc.; Equifax Information Services, LLC; and, Trans Union, LLC*

**CV16-2026 MWF (DTBx)**



**KAZEROUNI LAW GROUP, APC**
**1303 EAST GRAND AVENUE, SUITE 101**
**ARROYO GRANDE, CA 93420**
**(805) 335-8455**

**TRADE**                    **AUTOMATED CONSUMER DISPUTE VERIFICATION**          **_EQUIFAX_** CREDIT INFORMATION SERVICES

| Control Number | | | | Dispute 1 | [020] CLAIMS TRUE IDENTITY FRAUD - ACCOUNT FRAUDULENTLY OPENED INITIATE |
|---|---|---|---|---|---|
| Orig'n ACRA | EFX | Bureau Code | 9999 | | INVESTIGATION. |
| Date Cleared | 07/24/2016 | Response Due | 08/16/2016 | Dispute 2 | |
| Subscriber Code | | | | | |
| Account Number | | | | FCRA Relevant Information | RECEIVED FROM EXP ON 07/23/2016 |
| Subscr'r Name | Navient | | | | |
| Response Name | Donald Macfadden | | | | |
| Response From | 302-281-8175 | Response Date | 08/08/2016 | | |
| Response Code | ☑ Verified As Reported | ☐ Modify As Shown | | ☐ Delete Account | ☐ Delete Fraud |

| Reported Consumer Identity | | Same | Modified Consumer Identity | |
|---|---|---|---|---|
| Name | CUTLER RITA | ☑ | Name | CUTLER RITA |
| AKA FN | | ☐ | AKA FN | |
| Addr | | ☐ | Addr | |
| Prev | | ☐ | Prev | |
| SSN | | ☐ | SSN | |
| DOB | | ☑ | DOB | |
| Phone | | | Phone | |

| Account Type | ECOA | Date Open | Type & Rate | | Narrative |
|---|---|---|---|---|---|
| 12 | T | 07/2009 | I9 | | [067] CHARGED OFF ACCOUNT |
| | | | | | [248] STUDENT LOAN |
| Credit Limit | High Credit | Current Balance | Past Due | | |
| Original Charge-Off | Date 1st Delinquency | Last Payment Date | Date Closed | | |
| $20894 | 05/2011 | 09/2011 | | | |

| Activity Designator | | Creditor Classification | | Purchased / Sold To Name / Original Creditor | | Purchase Indicator | | Mortgage ID Number |
|---|---|---|---|---|---|---|---|---|
| | | | | | | | | |

| Terms Duration | Term Frequency | Sched Monthly Pmt | Actual Payment | Deferred Pay Start Date | Balloon Payment | Bal'oon Pay Due Date |
|---|---|---|---|---|---|---|
| 120 | [M] Monthly | $328 | | | | |

| Date of Account Info | Pmt Hist Months 1-12 | Pmt Hist Months 13-24 | Pmt Hist Months 25-36 | Pmt Hist Months 37-48 | Pmt Hist Months 49-60 | Pmt Hist Months 61-72 | Pmt Hist Months 73-84 |
|---|---|---|---|---|---|---|---|
| 12/2015 | -------LLLLL | LLLLLLLLLLLL | LLLLLLLLLLLL | LLLLLLLLLLLL | DDDDD4432DDD | DDDDDDDDDDDD | DDDDDDDD--- |

| Consumer's 100 Dispute | |
|---|---|
| Compliance Condition Code | |
| Special Comment Code | |
| Account Status | [97] Unpaid balance reported as a loss by credit grantor (charge-off) |
| Payment Rating | |

Printed 08/14/2017          Proprietary and Confidential to Equifax Information Services LLC - Use Pursuant to Company Instructions          Page 1

*EQUIFAX* CREDIT INFORMATION SERVICES

TRADE

AUTOMATED CONSUMER DISPUTE VERIFICATION

| IMAGES SENT |
|-------------|
| No Images Sent |

No Historical Data

Proprietary and Confidential to Equifax Information Services LLC - Use Pursuant to Company Instructions

Printed: 08/14/2017

# EXHIBIT G

# PLAINTIFF'S EXHIBIT 12

---

**In The Case Of**

*Andra Jay as Executor of the Estate of Rita Cutler,*

**v.**

*Navient Solutions, Inc.; Equifax Information Services, LLC; and, Trans Union, LLC*

**CV16-2026 MWF (DTBx)**



**KAZEROUNI LAW GROUP, APC**
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420
(805) 335-8455

| ACDV Response: | | | 99996205034985010 |
|---|---|---|---|
| Account Number: | ███████ | SSN: | ███████ |
| Consumer Name: | RITA  CUTLER | Control Number: | ███████ |
| Date Received: | 2016-07-24 20:57:17 | Originator: | Equifax |
| Response Code: | 01:Account information accurate as of date | Subscriber Code: | ███████ |
| Response Date: | 08/08/2016 | DF Contact Number: | |
| Response Due Date: | 08/16/2016 | DF Authorized Name: | Donald Macfadden |
| Queue Name: | Manual Letters | | |

| Dispute Information: | | |
|---|---|---|
| Dispute Code 1: | 103:Claims true identity fraud, account fraudulently opened.  Provide or confirm complete ID. | |
| Dispute Code 2: | | |
| FCRA Relevant Information: | RECEIVED FROM EXP ON 07/23/2016 | |

| Image Information: | | | | |
|---|---|---|---|---|
| Associated Images: | No | | | |
| Image ID: | | | | |
| Image Accessed Indicators: | | | | |

| Consumer Information: | | | |
|---|---|---|---|
| | Request Data | Response Data | Same / Diff |
| Last Name: | CUTLER | CUTLER | Same |
| First Name: | RITA | RITA | Same |
| Middle Name: | | | Unknown |
| Generation Code: | | | Unknown |
| Prev. Last Name: | | | Unknown |
| Prev. First Name: | | | Unknown |
| Prev. Middle Name: | | | Unknown |
| Prev.Generation Code: | | | |
| SSN: | ███████ | ███████ | Same |
| Date Of Birth: | ███████ | ███████ | Different |
| Telephone Number: | | | Different |
| ECOA Code: | T:Terminated | T:Terminated | |
| Street Address: | ███████ | | Different |
| City: | ███████ | ███████ | |
| State: | ███████ | | |
| Zip: | ███████ | ███████ | |
| Prev. Street Address: | ███████ | | Unknown |
| Prev. City: | ███████ | | |
| Prev. State: | ███████ | | |
| Prev. Zip: | ███████ | | |
| 2nd Prev. Street Address: | ███████ | | |
| 2nd Prev. City: | | | |
| 2nd Prev. State: | ███████ | | |
| 2nd Prev. Zip: | ███████ | | |

R3.04                                         1 of 3

CONFIDENTIAL                                                      AJ_NSL000001

EXHIBIT G

PAGE 155

| Account Information: | | 9.99962E+16 |
|---|---|---|
| | Request Data | Response Data |
| Account Status: | 97:Unpaid balance reported as a loss (charge off). | |
| Payment Rating: | | |
| Cond. / Cum. Status: | | |
| CII: | | |
| MOP: | | |
| CCC: | | |
| SCC: | | |
| Portfolio Type: | I:Installment | |
| Account Type: | 12:Education | |
| Interest Type Indicator: | | |
| Terms Duration: | 120 | |
| Terms Frequency: | M:Monthly | |
| Date Opened: | 07/02/2009 | |
| Date of Account Information: | 12/08/2015 | |
| Date of Last Payment: | 09/01/2011 | |
| Date Closed: | | |
| FCRA DOFD: | 05/01/2011 | |
| Current Balance: | | |
| Amount Past Due: | | |
| High Credit / Original Amt.: | | |
| Credit Limit: | | |
| Original Charge Off Amount: | 20894 | |
| Actual Payment: | | |
| Scheduled Monthly Payment: | 328 | |
| Original Creditor Name: | | |
| Creditor Classification: | | |
| Agency ID: | | |
| Sec. Mktg. Agency Acct Num: | | |
| Mortgage ID Number (MIN): | | |
| Specialized Payment Ind.: | | |
| Defrd. Payment Start Date: | | |
| Balloon Payment Amt.: | | |
| Balloon Payment Due Date: | | |
| Portfolio Indicator: | | |
| Purchased From / Sold To: | | |
| Narrative / Remarks: | | |

### Account History

| Year | | Dec | Nov | Oct | Sep | Aug | Jul | Jun | May | Apr | Mar | Feb | Jan |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 2016 | Req. | | | | | | - | - | - | - | - | - | - |
| | Resp. | | | | | | | | | | | | |
| 2015 | Req. | - | L | L | L | L | L | L | L | L | L | L | L |
| | Resp. | - | - | - | - | - | - | - | - | - | - | - | - |
| 2014 | Req. | L | L | L | L | L | L | L | L | L | L | L | L |
| | Resp. | - | - | - | - | - | - | - | - | - | - | - | - |
| 2013 | Req. | L | L | L | L | L | L | L | L | L | L | L | L |
| | Resp. | - | - | - | - | - | - | - | - | - | - | - | - |
| 2012 | Req. | L | L | L | L | L | L | D | D | D | D | D | 4 |
| | Resp. | - | - | - | - | - | - | - | - | - | - | - | - |
| 2011 | Req. | 4 | 3 | 2 | D | D | D | D | D | D | D | D | D |
| | Resp. | - | - | - | - | - | - | - | - | - | - | - | - |
| 2010 | Req | D | D | D | D | D | D | D | D | D | D | D | D |
| | Req | - | - | - | - | - | - | - | - | - | - | - | |
| 2009 | Req | D | D | D | - | - | | | | | | | |
| | Res | - | - | - | - | - | | | | | | | |

R3.04     2 of 3

CONFIDENTIAL     AJ_NSL00000☐

EXHIBIT G
PAGE 156

| | | | | |
|---|---|---|---|---|
| **Associated Consumer Information** | | | | 9.99962E+16 |
| Last Name: | | | | |
| First Name: | | | | |
| Middle Name: | | | | |
| Generation Code: | | | | |
| SSN: | | | | |
| Date Of Birth: | | | | |
| Telephone Number: | | | | |
| ECOA Code: | | | | |
| CII: | | | | |
| Street Address: | | | | |
| City: | | | | |
| State: | | | | |
| Zip: | | | | |
| Submitted by: | Donald Macfadden | | Date: | 08/08/2016 |

By submitting this ACDV, you certify that you have reviewed and considered all associated Images, you have verified the accuracy of the data in compliance with all legal requirements, and your computer and/or manual records will be adjusted to reflect any changes noted.

R3.04                                          3 of 3

CONFIDENTIAL                                                        AJ_NSL00000☐

EXHIBIT G
PAGE 157

# EXHIBIT H

# Plaintiff's Exhibit 14

---

### In The Case Of

*Andra Jay as Executor of the Estate of Rita Cutler,*

**v.**

*Navient Solutions, Inc.; Equifax Information Services, LLC; and, Trans Union, LLC*

**CV16-2026 MWF (DTBx)**



**KAZEROUNI LAW GROUP, APC**
1303 EAST GRAND AVENUE, SUITE 101
ARROYO GRANDE, CA 93420
(805) 335-8455

EXHIBIT H
PAGE 158



# NAVIENT

P.O. BOX 9500
WILKES-BARRE, PA 18773-9500

(888) 272-5543

RITA CUTLER

Account Number:

Dear RITA CUTLER:

08/08/16

Recently, we received a notice from one or more consumer reporting agencies indicating that the above loan is not yours or may be the result of identity theft. We have performed an investigation and concluded that the information we've provided regarding this loan to the consumer reporting agencies is valid.

If you still believe that the loan is not yours or that the loan is a result of identity theft, please call our Fraud Department at the number below. Otherwise, you'll continue to be responsible for repayment of the debt and we may continue to report the information to the consumer reporting agencies.

To discuss this allegation and provide us with additional information for reinvestigation, call us toll free at 800-891-1391. We're here to help you Monday – Friday 8 a.m. to 5 p.m., ET.

Sincerely,

Navient Identity Theft and Forgery Investigations



PHONE (888) 272-5543        FAX (800) 848-1949        TDD/TTY (877) 713-3833        Navient.com

Para comunicarse en Español con 'Atención al Cliente',
llame gratis al (888) 272-5543, y marque el numero correspondiente.

L156        C42192        S        1015



EXHIBIT H
PAGE 159